## BRUSHABER *v.* UNION PACIFIC RAILROAD COMPANY.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 140.   Argued October 14, 15, 1915.—Decided January 24, 1916.

Under proper averments a stockholder's suit to restrain a corporation from voluntarily paying a tax charged to be unconstitutional, is not violative of Rev. Stat., § 3224, and the District Court has jurisdiction to entertain the action. *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429.

In this case—that of a stockholder against a corporation to restrain the latter from voluntarily paying the income tax imposed by the Tariff Act of 1913,—the defendant corporation notified the Government of the pendency of the action, and the United States was heard as *amicus curiæ* in support of the constitutionality of the Act.

The Sixteenth Amendment was obviously intended to simplify the situation and make clear the limitations on the taxing power of Congress and not to create radical and destructive changes in our constitutional system.

The Sixteenth Amendment does not purport to confer power to levy income taxes in a generic sense, as that authority was already pos-

(1)

sessed, or to limit and distinguish between one kind of income tax and another; but its purpose is to relieve all income taxes when imposed from apportionment. from consideration of the source whence the income is derived.

The Income Tax provisions of the Tariff Act of 1913 are not unconstitutional by reason of retroactive operation, the period covered not extending prior to the time when the Amendment was operative; nor are those provisions unconstitutional under the due process provision of the Fifth Amendment; nor do they deny due process of law, nor equal protection of the law by reason of the classifications therein of things or persons subject to the tax.

The provisions for collecting income at the source do not deny due process of law by reason of duties imposed upon corporations without compensation in connection with the payment of the tax by others.

The uniformity of taxation required by the Federal Constitution is geographical. *Knowlton* v. *Moore*, 178 U. S. 41.

The Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution.

Arguments as to the expediency of levying a tax which is within the power of Congress to levy are beyond judicial cognizance.

When there are differences between the subjects that are taxed, Congress does not transcend the limit of its taxing power by taxing them differently.

A want of due process of law does not arise from want of wisdom in Congress in levying taxes and thus give the courts power to overrule the action of Congress by declaring it to be unconstitutional.

THE facts, which involve the construction of the Sixteenth Amendment and other provisions of the Constitution of the United States, and the constitutionality of the Income Tax provisions of the Tariff Act of October 9, 1913, are stated in the opinion.

*Mr. Julien T. Davies,* with whom *Mr. Brainard Tolles, Mr. Garrard Glenn* and *Mr. Martin A. Schenck* were on the brief, for the appellant:

The effect of the Sixteenth Amendment was merely to waive the requirement of apportionment among the States, in its application to a general and uniform tax

upon incomes from whatever source derived. The Income Tax Law of 1913, except in so far as the tax thereby imposed is in reality such a general and uniform tax on incomes, derives no support from the Sixteenth Amendment.

So much of the act of 1913, as subjects certain corporate earnings to the normal tax of one per cent. as income of the operating corporation, and again subjects the same earnings to a like tax while in process of distribution to the beneficial owners through the instrumentality of an intermediate corporation, operates as a discrimination in the nature of a penalty on corporations holding stock in other corporations and necessarily conflicts with the right of the several States to determine for themselves the permissible forms and modes of ownership of property.

The provisions complained of constitute a departure from the general plan of the act.

Holding stock in other corporations is not a legitimate basis of classification in a Federal tax law.

The authorities condemn arbitrary selection under the guise of classification.

The provisions of the statute which require collection at the source by corporations, debtors, fiduciaries and employers involve the taking of property without due process of law and the taking of private property for public use without compensation and are invalid.

Unapportioned compulsory service is not a tax.

Provision for just compensation is essential.

The act not only exacts labor without compensation, but exposes one collecting the income at the source to unnecessary risks and perils.

The act involves unreasonable discriminations and arbitrary classification.

The statute is invalid in the particular of seeking to tax income received prior to October 3, 1913.

The entire assessment of income tax against the defendant for the year 1913 is invalidated by the inclusion therein of the amount improperly assessed relative to the income received between March 1, 1913, and October 3, 1913.

In support of these contentions, see *Alexandria Canal Co.* v. *District of Columbia*, 1 Mackey, 217; 5 Mackey, 376; *Atlantic Coast Line* v. *Goldsboro*, 232 U. S. 548; *Attorney General* v. *Old Colony R. R.*, 160 Massachusetts, 62; *Barnes* v. *Railroads*, 17 Wall. 294; *Biddle's Appeal*, 97 Pa. St. 278; *In re Chapman*, 166 U. S. 661; *Chicago, B. & Q. Ry.* v. *Chicago*, 166 U. S. 226; *Chicago, M. & St. P. R. R.* v. *Wisconsin*, 238 U. S. 491; *Clarke* v. *Strickland*, 2 Curt. 439; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Consolidated Rendering Co.* v. *Vermont*, 207 U. S. 541; *Santa Clara County* v. *Southern Pacific R. R.*, 18 Fed. Rep. 385; *S. C.*, 118 U. S. 394; *San Mateo County* v. *Southern Pacific R. R.*, 13 Fed. Rep. 145; *In re Farrell*, 212 Fed. Rep. 212; *Freeland* v. *Hastings*, 10 Allen, 570; *Goodwin* v. *McGaughey*, 108 Minnesota, 248; *Gray* v. *Darlington*, 15 Wall. 63; *Guy* v. *Baltimore*, 100 U. S. 434; *Haight* v. *Railroad Co.*, 6 Wall. 15; *James* v. *Campbell*, 104 U. S. 356; *Johnson* v. *Colburn*, 36 Vermont, 693; *Joyner* v. *Third School District*, 3 Cush. 567; *Kalbach* v. *Clark*, 133 Iowa, 215; *Kilbourn* v. *Thompson*, 103 U. S. 168; *Lacey* v. *Davis*, 4 Michigan, 140; *Lake Shore R. Co.* v. *Smith*, 173 U. S. 684; *Libby* v. *Burnham*, 15 Massachusetts, 144; *Loan Assn.* v. *Topeka*, 20 Wall. 655; *Louis. & Nash. R. R.* v. *Stockyards*, 212 U. S. 132; *McCoach* v. *Minehill Ry.*, 228 U. S. 295; *McCulloch* v. *Maryland*, 4 Wheat. 316; *McCully* v. *Railroad*, 212 Missouri, 1; *Magoun* v. *Illinois Savings Bank*, 170 U. S. 283; *Mayor* v. *Cooper*, 131 Georgia, 670; *Merchants' Bank* v. *Pennsylvania*, 167 U. S. 461; *Merchants' Ins. Co.* v. *McCartney*, 1 Lowell, 447; *Minnesota Rate Cases*, 230 U. S. 352; *Mo. Pac. R. R.* v. *Larabbee Mills*, 211 U. S. 612; *National Deposit Co.* v. *Stead*, 232 U. S. 58; *New*

*Jersey* v. *Anderson,* 203 U. S. 483; *Pembina Mining Co.*
v. *Pennsylvania,* 125 U. S. 181; *Cornell* v. *Davenport,*
30 Hun, 177; *Pollock* v. *Farmers' L. & T. Co.,* 158 U. S.
601; *Richards* v. *Washington Terminal,* 233 U. S. 546;
*San Bernardino County* v. *Southern Pacific R. R.,* 118
U. S. 417; *Scholey* v. *Rew,* 23 Wall. 331; *Southern Ry.* v.
*Greene,* 216 U. S. 400; *Stetson* v. *Kempton,* 13 Massachu-
setts, 272; *Stockdale* v. *Insurance Cos.,* 20 Wall. 323;
*Sturges* v. *Crowninshield,* 4 Wheat. 122; *Sun Mutual Ins.*
*Co.* v. *Mayor,* 8 N. Y. 241; *Toone* v. *The State,* 178 Ala-
bama, 70; *Union Bank* v. *Chicago,* 3 Biss. 82; *United*
*States* v. *Buffalo Pitts Co.,* 234 U. S. 228; *United States*
v. *Fox,* 95 U. S. 670; *United States* v. *Harris,* 106 U. S. 629;
*United States* v. *Mitchell,* 58 Fed. Rep. 993; *United States*
v. *Singer,* 15 Wall. 111; *United States* v. *Railroad Co.,*
17 Wall. 322; *United States* v. *Welch,* 217 U. S. 333; *Ward*
v. *Maryland,* 12 Wall. 418; *Worthen* v. *Badgett,* 32 Ar-
kansas, 496.

*The Solicitor General* and *Mr. Assistant Attorney General*
*Wallace* for the United States, as *amicus curiæ,* by leave of
the court, in support of the decree appealed from:

Sections 3224 and 3226, Rev. Stat., preclude this
remedy and leave this court without jurisdiction of this
action. These statutes are constitutional. *Murray's*
*Lessée* v. *Hoboken L. & I. Co.,* 18 How. 272, 282; *Nichols*
v. *United States,* 7 Wall. 122; *United States* v. *Pacific Rail-*
*road,* 4 Dillon, 66; *Snyder* v. *Marks,* 109 U. S. 189; *Shelton*
v. *Platt,* 139 U. S. 591; *Allen* v. *Pullman Car Co.,* 139 U. S.
658; *Straus* v. *Abrast Realty Co.,* 200 Fed. Rep. 327; *Corbus*
v. *Gold Mining Co.,* 187 U. S. 455, 459; *Hawes* v. *Oakland,*
104 U. S. 450.

Taxes, when laid on income derived from realty or in-
vested personalty, are direct taxes and before the Sixteenth
Amendment were not subject to the rule of uniformity.
*Pollock* v. *Farmers' L. & T. Co.,* 157 U. S. 557; *Spreckels*

*Sugar Co.* v. *McLean,* 192 U. S. 397, 413; *License Tax Cases,* 5 Wall. 462, 471; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 177; *Southern Ry.* v. *King,* 217 U. S. 534; *Hatch* v. *Reardon,* 204 U. S. 160.

The Sixteenth Amendment removed the restriction of apportionment as to such income taxes as before were subject thereto.

The Constitution does not impose any implied or inherent rule of uniformity on the taxing power. *Pollock* v. *Farmers' L. & T. Co., supra,* 557; *License Tax Cases, supra,* 462, 471; *Patton* v. *Brady,* 184 U. S. 608; *McCray* v. *United States,* 195 U. S. 27; *Flint* v. *Stone Tracy Co., supra.*

Nor can such requirement be developed from the due process clause of the Fifth Amendment; or the due process or equal protection clauses of the Fourteenth Amendment. *Billings* v. *United States,* 232 U. S. 261, 282.

The rule of general uniformity is not violated by exemption, classification or discrimination, unless so arbitrary or outrageous as to indicate favoritism or prejudice. *Knowlton* v. *Moore,* 178 U. S. 41; *Flint* v. *Stone Tracy Co., supra,* 107; *Cook* v. *Marshall County,* 196 U. S. 261, 274; *Nicol* v. *Ames,* 173 U. S. 509, 521.

The express uniformity clause requires not intrinsic, but only geographical uniformity. *Knowlton* v. *Moore, supra,* 106; *Billings* v. *United States, supra,* 282.

Neither the Fifth nor the Fourteenth Amendment, if operative, would forbid reasonable exemption, classification or discrimination. *Dist. of Col.* v. *Brooke,* 214 U. S. 138, 150; *Second Employers' Liability Cases,* 223 U. S. 1, 52, 53; *Barrett* v. *Indiana,* 229 U. S. 26, 29; *Int. Harvester Co.* v. *Missouri,* 234 U. S. 199, 214, 215; *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61, 69; *Lindsley* v. *Natural Gas Co.,* 220 U. S. 61, 78; *Gibbons* v. *Dist. of Col.,* 116 U. S. 404; *Beers* v. *Glynn,* 211 U. S. 477; *Magoun* v. *Illinois Sav. Bank,* 170 U. S. 299; *Welch* v. *Cook,* 97 U. S. 541; *Home*

*of the Friendless* v. *Rouse,* 8 Wall. 430; *Salt Co.* v. *East Saginaw,* 13 Wall. 373.

Reasonable selection and classification is peculiarly a function of the Congress. Cooley on Const. Lim., 3d ed., 739; *Pacific Ins. Co.* v. *Soule,* 7 Wall. 433; *McCray* v. *United States,* 195 U. S. 27, 57, 61; *Veazie Bank* v. *Fenno,* 8 Wall. 548; *Treat* v. *White,* 181 U. S. 264, 269; *Flint* v. *Stone Tracy Co.,* supra, 167; *Lindsley* v. *Natural Gas Co.,* supra, 78; *Int. Harvester Co.* v. *Missouri,* supra, 215; *Barrett* v. *Indiana,* supra, 29, 30; *Nicol* v. *Ames,* supra, 521.

Those assailing a legislative classification carry the burden of demonstrating its unreasonableness. *Nicol* v. *Ames, supra,* 514, 515; *Lindsley* v. *Natural Gas Co., supra,* 78, 79.

None of the exemptions or discriminations here complained of are unreasonable, nor do they produce lack of uniformity. *Flint* v. *Stone Tracy Co., supra,* 178; *Home of the Friendless* v. *Rouse, supra; Salt Co.* v. *East Saginaw, supra; Gibbons* v. *District of Columbia, supra; Knowlton* v. *Moore, supra,* 109; *Peacock* v. *Pratt,* 121 Fed. Rep. 772, 777; *Pollock* v. *Farmers' L. & T. Co., supra,* 675, 676.

They were all within the power of selection and classification.

For taxation purposes there are fundamental distinctions between individuals and corporations. Black on Income Taxes, 28; *Flint* v. *Stone Tracy Co., supra,* 158, 161; *Nicol* v. *Ames, supra,* 521; *Kentucky R. R. Tax Cases,* 115 U. S. 321, 337, 339; *Pacific Exp. Co.* v. *Seibert,* 142 U. S. 339, 354; *Income Tax Cases,* 148 Wisconsin, 456.

Capital stock held by corporations may be distinguished from that held by individuals. *Tennessee* v. *Whitworth,* 117 U. S. 129, 136, 137; *New Orleans* v. *Citizens' Bank,* 167 U. S. 371; *Powers* v. *Detroit &c. Ry.,* 201 U. S. 543, 559, 560; *Flint* v. *Stone Tracy Co., supra,* 150.

There is no objectionable discrimination in the provi-

sion allowing deductions of interest paid.  *Flint* v. *Stone Tracy Co., supra,* 169, 171.

This tax is not an infraction of the state power to authorize formation of corporations, etc.  *Flint* v. *Stone Tracy Co., supra,* 152, 153, 158.

The "source collection" provisions are valid.  *Bank* v. *Commonwealth,* 9 Wall. 353, 363; *Home Savings Bank* v. *Des Moines,* 205 U. S. 503; Cooley on Taxation (3d ed.), 832, 834; *Patton* v. *Brady,* 184 U. S. 608, 620, 621; *Bell's Gap R. R.* v. *Pennsylvania,* 134 U. S. 232, 239; *Cummings* v. *National Bank,* 101 U. S. 153, 156; *National Deposit Co.* v. *Illinois,* 232 U. S. 58, 70; Gray on Limitations of Taxing Power, § 1196; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440, 444; *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461, 465; *Carstairs* v. *Cochran,* 193 U. S. 10; *Union Bank* v. *Richmond,* 94 Virginia, 316; *Commonwealth* v. *Citizens' Bank,* 117 Kentucky, 946.

The so-called retroactive feature is not objectionable. Previous statutes had like provisions.  12 Stat. 292, 473, 474; 13 Stat. 223, 281, 283, 417; 14 Stat. 471, 478, 480; 16 Stat. 256; 28 Stat. 553, § 27; Chap. 35, 5 & 6 Vict.; c. 34, 16 & 17 Vict.; 16 Halsb. Laws of England, 609; sub-sec. 4, English Finance Act of 1910; § 38, English Finance Act of 1894; *Drexel* v. *Commonwealth,* 46 Pa. St. 31, 40; *Stockdale* v. *Insurance Cos.,* 20 Wall. 323, 331, 341; *Income Tax Cases,* 148 Wisconsin, 456; Cooley on Taxation (3d ed.), pp. 492, 493, 494; *Locke* v. *New Orleans,* 4 Wall. 172; *Gray* v. *Darlington,* 15 Wall. 63, 66; *Maine* v. *Grand Trunk Ry.,* 142 U. S. 217; *Patton* v. *Brady,* 184 U. S. 608; *Flint* v. *Stone Tracy Co., supra,* 108.

There is no invalid delegation of judicial authority to the Secretary of the Treasury.  *Murray's Lessee* v. *Hoboken L. & I. Co.,* 18 How. 272; *Fong Yeu Ting* v. *United States,* 149 U. S. 698, 714; *Lem Moon Sing* v. *United States,* 158 U. S. 538, 544; *Nishimura Ekiu* v. *United States,* 142 U. S. 651, 660; *United States* v. *Duell,* 172 U. S.

576, 586; *Butterworth* v. *Hoe,* 112 U. S. 50, 67; *Runkle* v. *United States,* 122 U. S. 543, 557; *United States* v. *Ju Toy,* 198 U. S. 253; *Tang Tun* v. *Edsell,* 223 U. S. 673; *United States* v. *Sing Tuck,* 194 U. S. 161, 170; *Japanese Immigrant Case,* 189 U. S. 86, 98; *Turner* v. *Williams,* 194 U. S. 279; *Chin Bak Kan* v. *United States,* 186 U. S. 193; *Fok Yung Yo* v. *United States,* 185 U. S. 296; *Union Bridge Co.* v. *United States,* 204 U. S. 364, 386; *Buttfield* v. *Stranahan,* 192 U. S. 470; *Oceanic Navigation Co.* v. *Stranahan,* 214 U. S. 320.

This act is separable by its own express provisions, and the entire statute could not fail even were there partial invalidity. Section 4, par. T, Act of Oct. 3, 1913, 38 Stat. 166 *et seq.;* Cooley on Const. Lim. (7th ed.), 246, 247, 250; *Field* v. *Clark,* 143 U. S. 649; *Huntington* v. *Worthen,* 120 U. S. 97.

There was no argument on behalf of appellee.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

As a stockholder of the Union Pacific Railroad Company the appellant filed his bill to enjoin the corporation from complying with the Income Tax provisions of the Tariff Act of October 3, 1913, (§ II, ch. 16, 38 Stat. 166). Because of constitutional questions duly arising the case is here on direct appeal from a decree sustaining a motion to dismiss because no ground for relief was stated.

The right to prevent the corporation from returning and paying the tax was based upon many averments as to the repugnancy of the statute to the Constitution of the United States, of the peculiar relation of the corporation to the stockholders and their particular interests resulting from many of the administrative provisions of the assailed act, of the confusion, wrong and multiplicity

of suits and the absence of all means of redress which
would result if the corporation paid the tax and complied
with the act in other respects without protest, as it was
alleged it was its intention to do. To put out of the way
a question of jurisdiction we at once say that in view of
these averments and the ruling in *Pollock* v. *Farmers'
Loan & Trust Co.*, 157 U. S. 429, sustaining the right of
a stockholder to sue to restrain a corporation under proper
averments from voluntarily paying a tax charged to be
unconstitutional on the ground that to permit such a
suit did not violate the prohibitions of § 3224, Rev. Stat.,
against enjoining the enforcement of taxes, we are of
opinion that the contention here made that there was no
jurisdiction of the cause since to entertain it would violate
the provisions of the Revised Statutes referred to is with-
out merit. Before coming to dispose of the case on the
merits, however, we observe that the defendant corpora-
tion having called the attention of the Government to
the pendency of the cause and the nature of the contro-
versy and its unwillingness to voluntarily refuse to comply
with the act assailed, the United States as *amicus curiæ*
has at bar been heard both orally and by brief for the pur-
pose of sustaining the decree.

Aside from averments as to citizenship and residence,
recitals as to the provisions of the statute and statements
as to the business of the corporation contained in the first
ten paragraphs of the bill advanced to sustain jurisdic-
tion, the bill alleged twenty-one constitutional objections
specified in that number of paragraphs or subdivi-
sions. As all the grounds assert a violation of the Con-
stitution, it follows that in a wide sense they all charge a
repugnancy of the statute to the Sixteenth Amendment
under the more immediate sanction of which the statute
was adopted.

The various propositions are so intermingled as to cause
it to be difficult to classify them. We are of opinion, how-

ever, that the confusion is not inherent, but rather arises from the conclusion that the Sixteenth Amendment provides for a hitherto unknown power of taxation, that is, a power to levy an income tax which although direct should not be subject to the regulation of apportionment applicable to all other direct taxes. And the far-reaching effect of this erroneous assumption will be made clear by generalizing the many contentions advanced in argument to support it, as follows: (a) The Amendment authorizes only a particular character of direct tax without apportion-ment, and therefore if a tax is levied under its assumed authority which does not partake of the characteristics exacted by the Amendment, it is outside of the Amendment and is void as a direct tax in the general constitutional sense because not apportioned. (b) As the Amendment authorizes a tax only upon incomes "from whatever source derived," the exclusion from taxation of some income of designated persons and classes is not authorized and hence the constitutionality of the law must be tested by the general provisions of the Constitution as to taxation, and thus again the tax is void for want of apportionment. (c) As the right to tax "incomes from whatever source derived" for which the Amendment provides must be considered as exacting intrinsic uniformity, therefore no tax comes under the authority of the Amendment not conforming to such standard, and hence all the provisions of the assailed statute must once more be tested solely under the general and preëxisting provisions of the Constitution, causing the statute again to be void in the absence of apportionment. (d) As the power conferred by the Amendment is new and prospective, the attempt in the statute to make its provisions retroactively apply is void because so far as the retroactive period is concerned, it is governed by the preëxisting constitutional requirement as to apportionment.

But it clearly results that the proposition and the con-

tentions under it, if acceded to, would cause one provision of the Constitution to destroy another; that is, they would result in bringing the provisions of the Amendment exempting a direct tax from apportionment into irreconcilable conflict with the general requirement that all direct taxes be apportioned. Moreover, the tax authorized by the Amendment, being direct, would not come under the rule of uniformity applicable under the Constitution to other than direct taxes, and thus it would come to pass that the result of the Amendment would be to authorize a particular direct tax not subject either to apportionment or to the rule of geographical uniformity, thus giving power to impose a different tax in one State or States than was levied in another State or States. This result instead of simplifying the situation and making clear the limitations on the taxing power, which obviously the Amendment must have been intended to accomplish, would create radical and destructive changes in our constitutional system and multiply confusion.

But let us by a demonstration of the error of the fundamental proposition as to the significance of the Amendment dispel the confusion necessarily arising from the arguments deduced from it. Before coming, however, to the text of the Amendment, to the end that its significance may be determined in the light of the previous legislative and judicial history of the subject with which the Amendment is concerned and with a knowledge of the conditions which presumptively led up to its adoption and hence of the purpose it was intended to accomplish, we make a brief statement on those subjects.

That the authority conferred upon Congress by § 8 of Article I "to lay and collect taxes, duties, imposts and excises" is exhaustive and embraces every conceivable power of taxation has never been questioned, or, if it has, has been so often authoritatively declared as to render it necessary only to state the doctrine. And it has also never

been questioned from the foundation, without stopping presently to determine under which of the separate headings the power was properly to be classed, that there was authority given, as the part was included in the whole, to lay and collect income taxes. Again it has never moreover been questioned that the conceded complete and all-embracing taxing power was subject, so far as they were respectively applicable, to limitations resulting from the requirements of Art. I, § 8, cl. 1, that "all duties, imposts and excises shall be uniform throughout the United States," and to the limitations of Art. I, § 2, cl. 3, that "direct taxes shall be apportioned among the several States" and of Art. I, § 9, cl. 4, that "no capitation, or other direct, tax shall be laid, unless in proportion to the census or enumeration hereinbefore directed to be taken." In fact the two great subdivisions embracing the complete and perfect delegation of the power to tax and the two correlated limitations as to such power were thus aptly stated by Mr. Chief Justice Fuller in *Pollock* v. *Farmers' Loan & Trust Company, supra,* at page 557: "In the matter of taxation, the Constitution recognizes the two great classes of direct and indirect taxes, and lays down two rules by which their imposition must be governed, namely: The rule of apportionment as to direct taxes, and the rule of uniformity as to duties, imposts and excises." It is to be observed, however, as long ago pointed out in *Veazie Bank* v. *Fenno,* 8 Wall. 533, 541, that the requirement of apportionment as to one of the great classes and of uniformity as to the other class were not so much a limitation upon the complete and all embracing authority to tax, but in their essence were simply regulations concerning the mode in which the plenary power was to be exerted. In the whole history of the Government down to the time of the adoption of the Sixteenth Amendment, leaving aside some conjectures expressed of the possibility of a tax lying intermediate between the two great classes and embraced

by neither, no question has been anywhere made as to the
correctness of these propositions. At the very beginning,
however, there arose differences of opinion concerning the
criteria to be applied in determining in which of the two
great subdivisions a tax would fall. Without pausing to
state at length the basis of these differences and the con-
sequences which arose from them, as the whole subject was
elaborately reviewed in *Pollock* v. *Farmers' Loan & Trust
Company*, 157 U. S. 429; 158 U. S. 601, we make a con-
densed statement which is in substance taken from what
was said in that case. Early the differences were man-
ifested in pressing on the one hand and opposing on the
other, the passage of an act levying a tax without appor-
tionment on carriages "for the conveyance of persons,"
and when such a tax was enacted the question of its re-
pugnancy to the Constitution soon came to this court for
determination. (*Hylton* v. *United States*, 3 Dall. 171.)
It was held that the tax came within the class of excises,
duties and imposts and therefore did not require apportion-
ment, and while this conclusion was agreed to by all the
members of the court who took part in the decision of the
case, there was not an exact coincidence in the reasoning
by which the conclusion was sustained. Without stating
the minor differences, it may be said with substantial
accuracy that the divergent reasoning was this: On the
one hand, that the tax was not in the class of direct taxes
requiring apportionment because it was not levied directly
on property because of its ownership but rather on its use
and was therefore an excise, duty or impost; and on the
other, that in any event the class of direct taxes included
only taxes directly levied on real estate because of its
ownership. Putting out of view the difference of reasoning
which led to the concurrent conclusion in the *Hylton Case*,
it is undoubted that it came to pass in legislative practice
that the line of demarcation between the two great classes
of direct taxes on the one hand and excises, duties and,

imposts on the other which was exemplified by the ruling in that case, was accepted and acted upon. In the first place this is shown by the fact that wherever (and there were a number of cases of that kind) a tax was levied directly on real estate or slaves because of ownership, it was treated as coming within the direct class and apportionment was provided for, while no instance of apportionment as to any other kind of tax is afforded. Again the situation is aptly illustrated by the various acts taxing incomes derived from property of every kind and nature which were enacted beginning in 1861 and lasting during what may be termed the Civil War period. It is not disputable that these latter taxing laws were classed under the head of excises, duties and imposts because it was assumed that they were of that character inasmuch as although putting a tax burden on income of every kind, including that derived from property real or personal, they were not taxes directly on property because of its ownership. And this practical construction came in theory to be the accepted one since it was adopted without dissent by the most eminent of the textwriters. 1 Kent Com. 254, 256; 1 Story Const., § 955; Cooley Const. Lim. (5th ed.) * 480; Miller on the Constitution, 237; Pomeroy's Constitutional Law, § 281; Hare Const. Law, Vol. 1, 249, 250; Burroughs on Taxation, 502; Ordronaux, Constitutional Legislation, 225.

Upon the lapsing of a considerable period after the repeal of the income tax laws referred to, in 1894 an act was passed laying a tax on incomes from all classes of property and other sources of revenue which was not apportioned, and which therefore was of course assumed to come within the classification of excises, duties and imposts which were subject to the rule of uniformity but not to the rule of apportionment. The constitutional validity of this law was challenged on the ground that it did not fall within the class of excises, duties and imposts,

but was direct in the constitutional sense and was there-
fore void for want of apportionment, and that question
came to this court and was passed upon in *Pollock* v.
*Farmers' Loan & Trust Co.*, 157 U. S. 429; 158 U. S. 601.
The court, fully recognizing in the passage which we have
previously quoted the all-embracing character of the two
great classifications including, on the one hand, direct
taxes subject to apportionment, and on the other, excises,
duties and imposts subject to uniformity, held the law
to be unconstitutional in substance for these reasons:
Concluding that the classification of direct was adopted
for the purpose of rendering it impossible to burden by
taxation accumulations of property, real or personal, ex-
cept subject to the regulation of apportionment, it was
held that the duty existed to fix what was a direct tax in
the constitutional sense so as to accomplish this purpose
contemplated by the Constitution. (157 U. S. 581.) Com-
ing to consider the validity of the tax from this point of
view, while not questioning at all that in common under-
standing it was direct merely on income and only indirect
on property, it was held that considering the substance
of things it was direct on property in a constitutional
sense since to burden an income by a tax was from the
point of substance to burden the property from which
the income was derived and thus accomplish the very
thing which the provision as to apportionment of direct
taxes was adopted to prevent. As this conclusion but
enforced a regulation as to the mode of exercising power
under particular circumstances, it did not in any way
dispute the all-embracing taxing authority possessed by
Congress, including necessarily therein the power to im-
pose income taxes if only they conformed to the constitu-
tional regulations which were applicable to them. More-
over in addition the conclusion reached in the *Pollock*
*Case* did not in any degree involve holding that income
taxes generically and necessarily came within the class

of direct taxes on property, but on the contrary recognized the fact that taxation on income was in its nature an excise entitled to be enforced as such unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent, in which case the duty would arise to disregard form and consider substance alone and hence subject the tax to the regulation as to apportionment which otherwise as an excise would not apply to it. Nothing could serve to make this clearer than to recall that in the *Pollock Case* in so far as the law taxed incomes from other classes of property than real estate and invested personal property, that is, income from "professions, trades, employments, or vocations" (158 U. S. 637), its validity was recognized; indeed it was expressly declared that no dispute was made upon that subject and attention was called to the fact that taxes on such income had been sustained as excise taxes in the past. *Id.*, p. 635. The whole law was however declared unconstitutional on the ground that to permit it to thus operate would relieve real estate and invested personal property from taxation and "would leave the burden of the tax to be borne by professions, trades, employments, or vocations; and in that way what was intended as a tax on capital would remain, in substance, a tax on occupations and labor," (*Id.*, p. 637) a result which it was held could not have been contemplated by Congress.

This is the text of the Amendment:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

It is clear on the face of this text that it does not purport to confer power to levy income taxes in a generic sense—an authority already possessed and never ques-

tioned—or to limit and distinguish between one kind of
income taxes and another, but that the whole purpose of
the Amendment was to relieve all income taxes when
imposed from apportionment from a consideration of the
source whence the income was derived. Indeed in the light
of the history which we have given and of the decision in
the *Pollock Case* and the ground upon which the ruling
in that case was based, there is no escape from the con-
clusion that the Amendment was drawn for the purpose
of doing away for the future with the principle upon
which the *Pollock Case* was decided, that is, of deter-
mining whether a tax on income was direct not by a con-
sideration of the burden placed on the taxed income
upon which it directly operated, but by taking into view
the burden which resulted on the property from which
the income was derived, since in express terms the Amend-
ment provides that income taxes, from whatever source
the income may be derived, shall not be subject to the
regulation of apportionment. From this in substance it
indisputably arises, first, that all the contentions which
we have previously noticed concerning the assumed limi-
tations to be implied from the language of the Amend-
ment as to the nature and character of the income taxes
which it authorizes find no support in the text and are in
irreconcilable conflict with the very purpose which the
Amendment was adopted to accomplish. Second, that
the contention that the Amendment treats a tax on
income as a direct tax although it is relieved from appor-
tionment and is necessarily therefore not subject to the
rule of uniformity as such rule only applies to taxes which
are not direct, thus destroying the two great classifications
which have been recognized and enforced from the be-
ginning, is also wholly without foundation since the com-
mand of the Amendment that all income taxes shall not
be subject to apportionment by a consideration of the
sources from which the taxed income may be derived,

forbids the application to such taxes of the rule applied in the *Pollock Case* by which alone such taxes were removed from the great class of excises, duties and imposts subject to the rule of uniformity and were placed under the other or direct class. This must be unless it can be said that although the Constitution as a result of the Amendment in express terms excludes the criterion of source of income, that criterion yet remains for the purpose of destroying the classifications of the Constitution by taking an excise out of the class to which it belongs and transferring it to a class in which it cannot be placed consistently with the requirements of the Constitution. Indeed, from another point of view, the Amendment demonstrates that no such purpose was intended and on the contrary shows that it was drawn with the object of maintaining the limitations of the Constitution and harmonizing their operation. We say this because it is to be observed that although from the date of the *Hylton Case* because of statements made in the opinions in that case it had come to be accepted that direct taxes in the constitutional sense were confined to taxes levied directly on real estate because of its ownership, the Amendment contains nothing repudiating or challenging the ruling in the *Pollock Case* that the word direct had a broader significance since it embraced also taxes levied directly on personal property because of its ownership, and therefore the Amendment at least impliedly makes such wider significance a part of the Constitution—a condition which clearly demonstrates that the purpose was not to change the existing interpretation except to the extent necessary to accomplish the result intended, that is, the prevention of the resort to the sources from which a taxed income was derived in order to cause a direct tax on the income to be a direct tax on the source itself and thereby to take an income tax out of the class of excises, duties and imposts and place it in the class of direct taxes.

We come then to ascertain the merits of the many contentions made in the light of the Constitution as it now stands, that is to say, including within its terms the provisions of the Sixteenth Amendment as correctly interpreted. We first dispose of two propositions assailing the validity of the statute on the one hand because of its repugnancy to the Constitution in other respects, and especially because its enactment was not authorized by the Sixteenth Amendment.

The statute was enacted October 3, 1913, and provided for a general yearly income tax from December to December of each year. Exceptionally, however, it fixed a first period embracing only the time from March 1, to December 31, 1913, and this limited retroactivity is assailed as repugnant to the due process clause of the Fifth Amendment and as inconsistent with the Sixteenth Amendment itself. But the date of the retroactivity did not extend beyond the time when the Amendment was operative, and there can be no dispute that there was power by virtue of the Amendment during that period to levy the tax, without apportionment, and so far as the limitations of the Constitution in other respects are concerned, the contention is not open, since in *Stockdale* v. *Insurance Companies*, 20 Wall. 323, 331, in sustaining a provision in a prior income tax law which was assailed because of its retroactive character, it was said:

"The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed. The joint resolution of July 4th, 1864, imposed a tax of five per cent. upon all income of the previous year, although one tax on it had already been paid, and no one doubted the validity of the tax or attempted to resist it."

The statute provides that the tax should not apply to enumerated organizations or corporations, such as labor, agricultural or horticultural organizations, mutual savings banks, etc., and the argument is that as the Amendment authorized a tax on incomes "from whatever source derived," by implication it excluded the power to make these exemptions. But this is only a form of expressing the erroneous contention as to the meaning of the Amendment, which we have already disposed of. And so far as this alleged illegality is based on other provisions of the Constitution, the contention is also not open, since it was expressly considered and disposed of in *Flint* v. *Stone Tracy Co.*, 220 U. S. 108, 173.

Without expressly stating all the other contentions, we summarize them to a degree adequate to enable us to typify and dispose of all of them.

1. The statute levies one tax called a normal tax on all incomes of individuals up to $20,000 and from that amount up by gradations, a progressively increasing tax called an additional tax, is imposed. No tax, however, is levied upon incomes of unmarried individuals amounting to $3,000 or less nor upon incomes of married persons amounting to $4,000 or less. The progressive tax and the exempted amounts, it is said, are based on wealth alone and the tax is therefore repugnant to the due process clause of the Fifth Amendment.

2. The act provides for collecting the tax at the source, that is, makes it the duty of corporations, etc., to retain and pay the sum of the tax on interest due on bonds and mortgages, unless the owner to whom the interest is payable gives a notice that he claims an exemption. This duty cast upon corporations, because of the cost to which they are subjected, is asserted to be repugnant to due process of law as a taking of their property without compensation, and we recapitulate various contentions as to discrimination against corporations and against individ-

uals predicated on provisions of the act dealing with the subject:

(a) Corporations indebted upon coupon and registered bonds are discriminated against, since corporations not so indebted are relieved of any labor or expense involved in deducting and paying the taxes of individuals on the income derived from bonds.

(b) Of the class of corporations indebted as above stated, the law further discriminates against those which have assumed the payment of taxes on their bonds, since although some or all of their bondholders may be exempt from taxation, the corporations have no means of ascertaining such fact, and it would therefore result that taxes would often be paid by such corporations when no taxes were owing by the individuals to the Government.

(c) The law discriminates against owners of corporate bonds in favor of individuals none of whose income is derived from such property, since bondholders are, during the interval between the deducting and the paying of the tax on their bonds, deprived of the use of the money so withheld.

(d) Again corporate bondholders are discriminated against because the law does not release them from payment of taxes on their bonds even after the taxes have been deducted by the corporation, and therefore if after deduction the corporation should fail, the bondholders would be compelled to pay the tax a second time.

(e) Owners of bonds the taxes on which have been assumed by the corporation are discriminated against because the payment of the taxes by the corporation does not relieve the bondholders of their duty to include the income from such bonds in making a return of all income, the result being a double payment of the taxes, labor and expense in applying for a refund, and a deprivation of the use of the sum of the taxes during the interval which elapses before they are refunded.

3. The provision limiting the amount of interest paid which may be deducted from gross income of corporations for the purpose of fixing the taxable income to interest on indebtedness not exceeding one-half the sum of bonded indebtedness and paid-up capital stock, is also charged to be wanting in due process because discriminating between different classes of corporations and individuals.

4. It is urged that want of due process results from the provision allowing individuals to deduct from their gross income dividends paid them by corporations whose incomes are taxed and not giving such right of deduction to corporations.

5. Want of due process is also asserted to result from the fact that the act allows a deduction of $3,000 or $4,000 to those who pay the normal tax, that is, whose incomes are $20,000 or less, and does not allow the deduction to those whose incomes are greater than $20,000; that is, such persons are not allowed for the purpose of the additional or progressive tax a second right to deduct the $3,000 or $4,000 which they have already enjoyed. And a further violation of due process is based on the fact that for the purpose of the additional tax no second right to deduct dividends received from corporations is permitted.

6. In various forms of statement, want of due process, it is moreover insisted, arises from the provisions of the act allowing a deduction for the purpose of ascertaining the taxable income of stated amounts on the ground that the provisions discriminate between married and single people and discriminate between husbands and wives who are living together and those who are not.

7. Discrimination and want of due process results, it is said, from the fact that the owners of houses in which they live are not compelled to estimate the rental value in making up their incomes, while those who are living in rented houses and pay rent are not allowed, in making up their taxable income, to deduct rent which they have

paid, and that want of due process also results from the
fact that although family expenses are not as a rule per-
mitted to be deducted from gross, to arrive at taxable,
income, farmers are permitted to omit from their income
return, certain products of the farm which are susceptible
of use by them for sustaining their families during the
year.

So far as these numerous and minute, not to say in
many respects hypercritical, contentions are based upon
an assumed violation of the uniformity clause, their want
of legal merit is at once apparent, since it is settled that
that clause exacts only a geographical uniformity and
there is not a semblance of ground in any of the proposi-
tions for assuming that a violation of such uniformity is
complained of. *Knowlton* v. *Moore*, 178 U. S. 41; *Patton*
v. *Brady*, 184 U. S. 608, 622; *Flint* v. *Stone Tracy Co.*,
220 U. S. 107, 158; *Billings* v. *United States*, 232 U. S.
608, 622.

So far as the due process clause of the Fifth Amendment
is relied upon, it suffices to say that there is no basis for
such reliance since it is equally well settled that such
clause is not a limitation upon the taxing power conferred
upon Congress by the Constitution; in other words, that
the Constitution does not conflict with itself by conferring
upon the one hand a taxing power and taking the same
power away on the other by the limitations of the due
process clause. *Treat* v. *White*, 181 U. S. 264; *Patton* v.
*Brady*, 184 U. S. 608; *McCray* v. *United States*, 195 U. S.
27, 61; *Flint* v. *Stone Tracy Co.*, *supra; Billings* v. *United
States*, 232 U. S. 261, 282. And no change in the situation
here would arise even if it be conceded, as we think it
must be, that this doctrine would have no application in
a case where although there was a seeming exercise of the
taxing power, the act complained of was so arbitrary as
to constrain to the conclusion that it was not the exertion
of taxation but a confiscation of property, that is, a taking

of the same in violation of the Fifth Amendment, or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion. We say this because none of the propositions relied upon in the remotest degree present such questions. It is true that it is elaborately insisted that although there be no express constitutional provision prohibiting it, the progressive feature of the tax causes it to transcend the conception of all taxation and to be a mere arbitrary abuse of power which must be treated as wanting in due process. But the proposition disregards the fact that in the very early history of the Government a progressive tax was imposed by Congress and that such authority was exerted in some if not all of the various income taxes enacted prior to 1894 to which we have previously adverted. And over and above all this the contention but disregards the further fact that its absolute want of foundation in reason was plainly pointed out in *Knowlton* v. *Moore, supra,* and the right to urge it was necessarily foreclosed by the ruling in that case made. In this situation it is of course superfluous to say that arguments as to the expediency of levying such taxes or of the economic mistake or wrong involved in their imposition are beyond judicial cognizance. Besides this demonstration of the want of merit in the contention based upon the progressive feature of the tax, the error in the others is equally well established either by prior decisions or by the adequate bases for classification which are apparent on the face of the assailed provisions, that is, the distinction between individuals and corporations, the difference between various kinds of corporations, etc., etc. *Knowlton* v. *Moore, supra; Flint* v. *Stone Tracy Co., supra; Billings* v. *United States, supra; National Bank* v. *Commonwealth,* 9 Wall. 353; *National Safe Deposit Co.* v. *Illinois,* 232 U. S. 58, 70. In fact, comprehensively surveying all the contentions

relied upon, aside from the erroneous construction of the Amendment which we have previously disposed of, we cannot escape the conclusion that they all rest upon the mistaken theory that although there be differences between the subjects taxed, to differently tax them transcends the limit of taxation and amounts to a want of due process, and that where a tax levied is believed by one who resists its enforcement to be wanting in wisdom and to operate injustice, from that fact in the nature of things there arises a want of due process of law and a resulting authority in the judiciary to exceed its powers and correct what is assumed to be mistaken or unwise exertions by the legislative authority of its lawful powers, even although there be no semblance of warrant in the Constitution for so doing.

We have not referred to a contention that because certain administrative powers to enforce the act were conferred by the statute upon the Secretary of the Treasury, therefore it was void as unwarrantedly delegating legislative authority, because we think to state the proposition is to answer it. *Field* v. *Clark*, 143 U. S. 649; *Buttfield* v. *Stranahan*, 192 U. S. 470, 496; *Oceanic Steam Navigation Co.* v. *Stranahan*, 214 U. S. 320.

*Affirmed.*