MANUFACTURERS TRUST CO. v. UNITED STATES

No. 43829.

Court of Claims.
April 1, 1940.

Donald Marks, of New York City (Baer & Marks, of New York City, on the brief), for plaintiff.

George H. Foster, of Washington, D.C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D.C., on the brief), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

GREEN, Judge.

This suit is begun to recover a refund of an alleged overpayment of the tax imposed by section 8 of the Silver Purchase Act of 1934, 48 Stat. 1179, 26 U.S.C.A.Int.Rev. Code, §§ 1805, 1821(b) (4). There is no dispute as to the facts in the case which so far as material to the decision to be rendered, are as follows:

In 1934, plaintiff purchased approximately 2,000,000 ounces of silver bullion in eight purchases. Between December 3, 1935, and January 6, 1936, plaintiff sold this silver in thirteen lots by separate sales. The first nine sales in December 1935, were made at a profit, while the last four sales in January 1936 were at prices below cost.

Plaintiff's cost for all of this silver was $1,009,410.31. It incurred expenses of $6,287.61 in connection with holding, process-

ing, or transporting the silver. It paid out legal fees for advice in connection with the proposed purchase of the silver bullion and the legal profits involved therein, together with the liability of plaintiff as transferee in the purchase thereof and its liability as transferor in the sales made. This advice also covered questions arising in connection with the place of storage and disposition of the silver, the preparation and filing of silver tax returns and the obtaining of rulings and filing of protests in connection therewith. The total of these legal fees amounted to $2,095.10 which was reasonable in amount. Gross receipts from the sales were $1,142,853.27, making a gross profit of $133,442.96 and a net profit (if the legal fees are considered a deductible expense) of $125,060.25.

Following the sales plaintiff, under protest, filed returns or memoranda for each. On these returns the expenses, including the legal fees, were deducted from the gross receipts and the total of the tax thus computed amounting to $74,969.66 was paid.

Subsequently the returns were examined and the amount of legal fees was disallowed. Thereupon nine amended returns were filed eliminating the legal fees and additional taxes of $1,047.55 were paid.

Plaintiff filed proper and timely claims for refund claiming that the tax should be but 50 percent of the profit derived from all the sales taken together and that the legal fees should be allowed as deductible expenses. These claims were rejected and this suit was timely brought.

The main issue in the case is whether the tax was properly imposed on the profits of each sale, calculated upon the excess of receipts from such sale over the average cost of all the silver bullion, plus allowed expenses. This method eliminates the loss sustained on that portion of the silver which was sold on January 3 and 6, 1936.

The second issue in the case is whether the Commissioner correctly disallowed the item of $2,095.10 of legal expense as a deductible item.

The plaintiff contends that the sales of silver bullion from December 3, 1935, through January 6, 1936, constituted the transfer of a single interest in silver bullion and that the tax should have been calculated on the difference between the aggregate receipts and the cost thereof, plus allowable expenses.

With this contention we are unable to agree. The statute places a tax on any interest in silver bullion "transferred" if the price exceeds the total of the cost thereof and allowed expenses, and the term "transfer" is defined as follows: "The term 'transfer' means a sale, agreement of sale, agreement to sell, memorandum of sale or delivery of, or transfer, whether made by assignment in blank or by any delivery, or by any paper or agreement or memorandum or any other evidence of transfer or sale; or means to make a transfer as so defined."

Giving to this language its ordinary significance, each separate sale of the silver constituted a separate transfer. Each of these sales was a separate transaction governed and controlled by its terms without regard to other sales that might be made or the total amount of silver bullion held by the plaintiff at the time the sale was made. It is true the statute defines an "interest in silver bullion" as "any title or claim to, or interest in, any silver bullion or contract therefor," but this definition is in general terms referring merely to the nature or the title of the claim or interest in silver bullion transferred and does not define what constitutes a transfer. The fact that plaintiff regarded the 2,000,000 ounces of silver bullion as a single investment and that it considered its method of disposing of such a quantity of silver reasonable and proper in view of the conditions which then existed is entirely immaterial. We conclude that the Commissioner imposed the tax in accordance with the statute.

The plaintiff contends that the application of the silver tax in the manner used in this case involves an unconstitutional interpretation of the statute. Part of its argument in support of this contention is based upon the premise that plaintiff's sales of silver constituted one transaction. In what has been said above we have shown, as we think, that the sales were in fact separate and distinct transactions. But, as we understand plaintiff's argument, it is further contended that even so the tax would be unconstitutional by reason of its being assessed on transactions in silver bullion that showed a profit without making any allowance or deduction for similar transactions that resulted in a loss, and that a tax so assessed cannot be a true income tax. The validity of the tax involved was attacked in the case of United States v. Hud-

son, 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370, and while in that case it was argued that the tax was unconstitutional by reason of its retroactive features, the court definitely held that the levy was a "special income tax" and constitutional.

The decision in the Hudson case, supra, settles the question of whether the tax in controversy is an income tax and we think the opinion in that case holds in effect that Congress may segregate the income or profit from a particular transaction and tax it separately, without making any provision with reference to losses sustained in other transactions, although they might be similar in their nature. See Cohn v. United States, 23 F.Supp. 534, 87 Ct.Cl. 422. The matter of deductions, credits, and allowances on an income tax is in the discretion of Congress, and if Congress sees fit to deny them in unrelated though similar transactions it is acting within its power. This principle has been applied in the limitation placed upon deductions for capital losses in the statutory provisions with reference to the taxes on capital gains which has always been enforced and considered constitutional.

Much of plaintiff's argument is devoted to the question of whether the tax involved is direct or indirect. In Brushaber v. Union Pacific R. R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713, it was held in effect that the constitutional amendment which authorized the levy of an income tax made it immaterial whether it was a direct tax or an indirect tax. The plaintiff contends that the silver tax is not an excise or an indirect tax and is not sustainable as a direct tax, yet it must be one or the other; and being, as the Supreme Court has held, an income tax, can be sustained on either basis. The Brushaber case, supra, is also authority for the principle that a tax levied upon property because of its ownership is direct, while one levied upon property because of its use is an excise duty or impost. The silver tax is manifestly not a tax levied on property because of its ownership but one levied upon the use made of the property. We think, therefore, it is an excise tax, and find no constitutional objection against the manner in which it is applied in the case before us.

It should also be noted, in this connection, that the gains which plaintiff realized were in one calendar year, and the losses in another. The statute makes no reference to calendar or fiscal years, and it would be entirely impracticable to create a taxable year for its enforcement.

The plaintiff paid legal fees amounting to $2,095.10 to counsel who were retained specifically and only for the purpose of advising in connection with the proposed purchase of silver bullion and the legal problems involved therein, including the tax liability when the bullion was sold and the making of tax returns. This item of expense was disallowed by the Commissioner. The statute specifies definitely certain items of expense which may be allowed. Legal fees are not specified as allowable, and "charges in the nature of overhead" are specifically excluded. The failure to include legal fees in the list of allowable items would, by itself, exclude them, unless there was something further in the statute which would show a different intention. The only further statement in the statute is to the effect that the specified items would include "storage, insurance, and transportation charges," but would not include "interest, taxes, or charges in the nature of overhead." We do not think it is necessary to determine whether the legal fees involved were "in the nature of overhead" as there is nothing in the statute which authorizes their allowance.

It follows that plaintiff's petition must be dismissed, and it is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

WILLIAMS, Judge, took no part in the decision of this case.