Joseph **TUMBARELLO,** Plaintiff,

v.

The **UNITED STATES,** Defendant.

No. 209–84 T.

United States Claims Court.

Sept. 19, 1989.

Joseph Tumbarello, Staten Island, N.Y., pro se.

Robert N. Dorosin, Washington, D.C., with whom was Shirley D. Peterson, Asst. Atty. Gen., for U.S.

## OPINION

RADER, Judge.

In this income tax case, plaintiff seeks a refund of $25,238.47 for tax years 1981 and 1982. Defendant has counterclaimed for unpaid taxes in tax year 1982.

Plaintiff is a member of the Order of St. Matthew. As a member of this religious order, he obeys the vow of poverty. Plaintiff claims that his religious obligations render him exempt from tax on income from his work as a carrier for the New York News and the New York Times.

Defendant now moves for summary judgment. After a status conference and consideration of the briefs, this court grants defendant's motion and counterclaim.

## FACTS

During 1981 and 1982, plaintiff worked as a newspaper carrier for the New York News. Plaintiff loaded newspapers onto a truck and delivered them to vendors five days per week. Plaintiff's immediate supervisor was an assistant foreman. Plaintiff also received pay for part-time employment with the New York Times during the years 1981 and 1982. Although neither party sought nor entered an employment contract, plaintiff and the newspaper enjoyed an employee-employer relationship.

In 1981, plaintiff joined an organization known as the Worldwide Religious Order of Almighty God. In late 1982, plaintiff left the Worldwide Order and joined another organization known as the Order of St. Matthew. Meantime plaintiff continued to work for the New York News and the New York Times.

In August 1982, plaintiff sent letters to both employers in which he stated that he was a member of a religious order. The letters requested plaintiff's employers to stop withholding social security tax (FICA) from his weekly wages. On August 18, 1982, plaintiff also filed an employee's withholding allowance certificate (Form W-4), in which he claimed to be exempt from tax. In September 1982 and June 1983, the Internal Revenue Service (IRS) sent letters directing plaintiff's employers to disregard plaintiff's exemption claim and withhold tax as if plaintiff were single and claiming one withholding allowance.

During the first part of 1981, plaintiff deposited his wage checks into a bank account in his own name. After joining the Worldwide Order, plaintiff began depositing his paychecks from the newspapers into a "church" bank account. Plaintiff called his "church" the "Church of Divine Prophecy." The "Church of Divine Prophecy" maintained two bank accounts—a savings account and a checking account—at the Northfield Savings Bank in Staten Island. The authorized signatories for the withdrawal of funds from these two accounts were plaintiff and his wife, Rosalind Leung. Plaintiff paid bills for groceries, clothing, and his monthly mortgage from the "church" accounts. Plaintiff also paid his newspaper employee union dues and occasional utility bills in 1981 and 1982 with checks from the "church" accounts.

No religious order ever directed plaintiff to withdraw funds from his "church" accounts or had signatory rights for the withdrawal of funds. Plaintiff never sent any accounting of the deposits and expenses of the "church" accounts to his religious order.

On April 15, 1982 plaintiff filed a Form 1040 for his tax year 1981. On the federal income tax return, plaintiff listed his occupation as a minister and checked the box "married filing separately." Plaintiff signed this form but left blank the spaces

designated for wages, total income, adjusted gross income, taxable income, and tax. Plaintiff's federal income tax withheld for 1981 was $5,469.00. Plaintiff requested a refund of this total of $5,475.42 (including $6.42 excess FICA tax withheld).

On June 8, 1983 the IRS issued a statutory notice of deficiency to plaintiff for 1981, reflecting an income tax deficiency of $9,389.00. The statutory notice reflected that for tax year 1981 plaintiff had gross income of $31,720.00 and taxable income of $29,345.00. On October 27, 1983, the IRS assessed for 1981 an income tax deficiency against plaintiff of $9,389.00, a delinquency penalty of $978.50, a negligence penalty of $1,793.00, and interest thereon.

Plaintiff filed Form 1040 for tax year 1982 on May 5, 1983. Plaintiff entered no amount for adjusted gross income and taxable income. An amount of $2,053.75 reflected federal income tax withholding. On August 11, 1986, the IRS assessed an income tax deficiency of $10,139.00, a delinquency penalty of $2,021.31, a negligence penalty of $2,763.65, an estimated tax penalty of $735.99, and interest thereon of $4,955.92 for the 1982 tax year.

Joseph Tumbarello, acting on his own behalf, filed a complaint in this court on April 24, 1984, alleging that the Secretary of the Treasury at various times instructed his employers to change his Form W–4 to single, one withholding allowance. Further, plaintiff alleged that his employers acted without authority and without due process of law. Accordingly, plaintiff requested issuance of a mandatory injunction for the protection of "plaintiff's own person, family, property, liberty, immunities, and rights...." Notwithstanding plaintiff's demands beyond the jurisdiction of this court, the action was allowed to continue on the basis that it stated a monetary claim against the United States for a lump sum of taxes withheld from plaintiff's wages.

On October 21, 1986, defendant filed an Amended Answer and Counterclaim. Almost one year later, on September 3, 1987, the court entered an Order directing plaintiff to respond to the counterclaim by Octo-

ber 5, 1987, or the Clerk would enter Judgment dismissing part of plaintiff's complaint. Plaintiff did not respond and Judgment was entered for tax years 1983 and 1984.

The court's docket sheet reveals that nothing transpired during the fourteen-month period from October 1987 to December 9, 1988, when an Order was entered directing plaintiff to file a Status Report on or before February 10, 1989. The case had recently been reassigned to the current judge. The court's order instructed plaintiff to state what actions had been taken to prosecute this case since September 3, 1987. Plaintiff did not respond to this Order on time.

On February 13, 1989, this court entered an Order to Show Cause Why Plaintiff's Complaint Should Not Be Dismissed for Failure to Prosecute. Later that same day, plaintiff filed a motion for trial date that was accompanied by a Status Report. Although lacking proof of service, this court granted permission for filing of the Status Report.

Plaintiff's Status Report, received February 13, 1989, consisted of eight lines, referring to plaintiff's motion to set a trial date and stating that: "Plaintiff has not been able to reach defendant. Three telephone calls were placed to defendant's phone number on the morning of February 8, 1989. In each case, defendant did not answer."

After considerable efforts to contact plaintiff, this court scheduled a telephone status conference for February 17, 1989. During the telephone status conference, defendant complained that plaintiff had not yet corrected and returned his deposition. Plaintiff agreed to correct his deposition on or before February 28, 1989. Plaintiff also agreed to file a response within sixty days after defendant filed its summary judgment motion.

Defendant filed its summary judgment motion on April 14, 1989. Plaintiff did not timely respond. At length, this court entered an Order to Show Cause Why the Complaint Should Not be Dismissed in 10

Days for Failure to Comply with the Court's Order.

On July 11, 1989, this court issued a Memorandum Opinion granting defendant's summary judgment motion as unopposed and dismissing plaintiff's claims with prejudice. Three days later, on July 14, 1989, plaintiff responded to the court's Order to Show Cause. Plaintiff requested additional time until August 1, 1989 to respond to defendant's summary judgment motion.

In order to provide plaintiff every opportunity to make his case, this court vacated its memorandum opinion and reinstated the case. This court also granted plaintiff an extension of time until August 14, 1989 to respond to defendant's summary judgment motion. Subsequently, plaintiff filed his response on August 14, 1989.

Defendant contends that plaintiff earned income in his individual capacity as an employee of the New York News and the New York Times during 1981 and 1982. Defendant argues that plaintiff's earnings were individual income and not income as an agent of a tax-exempt religious organization.

Plaintiff asserts that he is exempt from taxes because of his membership in a religious organization that required him to take vows of poverty and obedience. Further, plaintiff contends that the Constitution prohibits interference with the free exercise of religion or the taking of property without due process.

The legal question in this case is whether plaintiff's income earned for tax years 1981 and 1982 is attributable to two religious organizations.

## DISCUSSION

RUSCC 56(c) provides that summary judgment shall be rendered if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." When the facts are not in dispute, summary judgment is not "a disfavored procedural shortcut, but rather ... an integral part of the Federal Rules...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The parties agree that no facts remain in dispute.[1] Plaintiff has not completed a statement of genuine issues and has not placed any material facts in dispute. Thus this court resolves the case as a matter of law.

Plaintiff claims that his income is not subject to tax because he has made vows of obedience and poverty as a member of a religious order. This issue was addressed recently by the Federal Circuit in *Kircher v. United States*, 872 F.2d 1014 (Fed.Cir. 1989). In *Kircher* the court reaffirmed that an individual who has taken the vows of poverty and obedience may nevertheless have earned income in an individual capacity. The court cited *Fogarty v. United States*, 780 F.2d 1005 (Fed.Cir.1986) and listed some of the considerations that are relevant to this issue:

(1) [T]he degree of control exercised by the order over the member, (2) the ownership rights between the member and the order, (3) the purposes or mission of the order, (4) the type of work performed by the member vis-a-vis the purposes or mission of the order, (5) the dealings between the member and the third-party employer, and (6) the dealings between the employer and the order.

*Kircher*, 872 F.2d at 1018 (footnote omitted).

■ In the case at bar, none of the considerations listed by the Federal Circuit weigh in plaintiff's favor. Plaintiff's mere

---

1. In discussing the steps necessary for resolution of this case the plaintiff stated:

MR. TUMBARELLO: Well, as far as I understand, there is a—we—I don't—there's no discovery that we want to go through. We have—we are basing—I am basing everything—all of the actions that have happened in the past and the entire case upon Constitutional issues. And everything is written in the law and it's black and white. There's nothing to question. Therefore, what we have to do is present it in front of a court of law and get it resolved.

THE COURT: Does the Court understand you that you are basing your entire case on Constitutional issues?

MR. TUMBARELLO: Yes.

Transcript of Proceedings of February 17, 1989, filed March 22, 1989 at 3.

assertion that he was assigned by the religious order to serve the New York Times and New York News is not sufficient. The vow of poverty does not in and of itself establish that the taxpayer is performing secular duties as an agent of a religious order.

The Federal Circuit included as a relevant factor the degree of control exercised by the religious order over the member. Neither the Worldwide Order nor the Order of St. Matthew exercised control over plaintiff's activities as a newspaper delivery driver. Plaintiff was under the sole supervision and control of the New York News and the New York Times while delivering newspapers.

Plaintiff began employment delivering newspapers in 1972, nine years before his membership in the religious organizations. His day-to-day job activities remained the same after joining the religious order. Plaintiff was a member of the employees' union at the New York News. The Union insurance premiums provided medical benefits for plaintiff and his family. Plaintiff's supervisor was an assistant foreman at the New York News. Thus, supervision of plaintiff's on-the-job activities was done entirely by the supervisory staff of the newspapers that employed him.

The second factor, ownership rights between the member and the order, supports the conclusion that plaintiff earned income as an individual. Plaintiff retained dominion and control over his wages from the newspapers. The pay checks were made out to him individually. He never made an accounting of the funds to the religious order. Neither of the religious organizations had signatory authority to withdraw funds from plaintiff's "church" accounts. Plaintiff and his wife were the sole authorized signatories to withdraw funds from the "church" accounts and funds from those accounts were used to pay for personal and family expenses.

The next two factors, the purposes or mission of the order and the type of work performed by the member vis-a-vis the purpose of the mission, are not well defined in this case. Plaintiff stated that he was instructed to continue in his employment and save funds for church purposes. The accumulation of capital may be a worthy goal, but a religious purpose requires more detail. The record is void of any evidence that plaintiff's daily activities in his employment involved religious duties. His daily activities involved driving a truck and delivering newspapers; thus his employment duties did not involve any religious activities.

Another factor requires this court to examine the dealings between plaintiff and his employers. The dealings in this case were extensive. He waited until the New York News called him to work. He was under the control and supervision of the newspapers while delivering papers. Plaintiff's pay checks were made to him individually and the newspapers did not impose upon his employment status any condition that he be a member of a religious order. Thus, plaintiff dealt directly with the newspapers as his employers, and not as third parties through his religious order.

Finally, this court considers the dealings between plaintiff's employers and the religious orders. The record reveals that there was no communication between the newspapers and the Order of St. Matthew or the Worldwide Order concerning plaintiff's employment. All of the dealings regarding plaintiff's employment were between the newspapers and plaintiff. Plaintiff never recalled any discussion or negotiations between the religious organizations and the supervisory staff of the newspapers.

Clearly plaintiff earned income in an individual capacity from his employers, the New York Times and the New York News. Plaintiff was acting as an individual and principal, as such his income was received on his own behalf rather than on behalf of the religious orders. The income is includable in his gross income and taxable to him.

Plaintiff has asserted several Constitutional issues that can be only characterized as defenses. The Constitutional issues do not raise disputes of material fact and do not address his employment relationship with the New York newspapers.

■ Plaintiff argues that his First Amendment "free exercise" rights are lim-

ited. To the contrary, plaintiff may continue to espouse any belief and solicit support for his causes. The taxation of plaintiff's wages as a newspaper delivery driver does not hinder his religious freedom. *See Christian Echoes Nat'l Ministry, Inc. v. United States*, 470 F.2d 849, 856–57 (10th Cir.1972).

 Plaintiff also contends that his due process rights under the Fifth Amendment would be violated if his wages as a newspaper delivery driver are subject to income tax. The Due Process Clause of the Fifth Amendment is not a limitation on the taxing power conferred upon Congress by the Constitution. *Brushaber v. Union Pacific R.R.*, 240 U.S. 1, 24, 36 S.Ct. 236, 244, 60 L.Ed. 493 (1916).

The Internal Revenue Code sets forth the general rule that gross income includes "all income from whatever source derived." 26 U.S.C. § 61(a) (1982). Section 61(a)(1) specifically lists compensation for services as an income item. Plaintiff cannot avoid the broad mandate of § 61 by merely asserting that he was acting as an agent of a religious order and was subject to vows of poverty and obedience. Income received in an individual capacity for services rendered by plaintiff during 1981 and 1982 remains fully taxable.

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment. The Clerk is directed to enter judgment for defendant on its counterclaim against plaintiff for tax year 1982 in the amount of $10,531.03, together with statutory interest. Further, the Clerk is directed to dismiss plaintiff's Complaint and First Amended Complaint for tax years 1981 and 1982, with prejudice.

No costs.