## MANHATTAN GENERAL EQUIPMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

## COLLIER SERVICE CORPORATION v. SAME.

### Nos. 162, 163.

Circuit Court of Appeals, Second Circuit.
April 15, 1935.

MANTON, Circuit Judge, dissenting.

894

Laurence Graves, of Washington, D. C., and A. M. Kracke, of Chicago, Ill. (Caruthers Ewing, of New York City, of counsel), for petitioners.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., of counsel), for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The first question before us is whether there was any deductible loss in 1925 because of the cancellation of the contract between Artemas Ward and Interborough Rapid Transit on November 1, 1925. This depends on whether the deductions for exhaustion allowed to Artemas Ward between March 1, 1913, and March 13, 1922, when the latter transferred the contract to Artemas Ward, Inc. (N. Y.), in exchange for all the stock of that corporation, should be added to the deductions for exhaustion allowed to Artemas Ward, Inc. (N. Y.), between the date of transfer and the time of cancellation. If the allowances granted to Artemas Ward and to his transferee Artemas Ward, Inc. (N. Y.), may all be taken into account, no part of the March 1, 1913, value of the contract would remain, so that there would be no deductible loss due to the cancellation on November 1, 1925.

The contract transferred by Artemas Ward to Artemas Ward, Inc. (N. Y.), was acquired by the latter pursuant to such a nontaxable exchange as is described in section 203 (b) (4) of the Revenue Act of 1926, 26 USCA § 934 (b) (4), which provides that: "(4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock * * * in such corporation, and immediately after the exchange such person or persons are in control of the corporation. * * *"

Section 204 (a) (8) of the same act, 26 USCA § 935 (a) (8), provides that:

"The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * *

"(8) If the property * * * was acquired after December 31, 1920, by a corporation by the issuance of its stock * * * in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 [section 934], * * * then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

In spite of the fact that the transfer of the contract from Artemas Ward to Artemas Ward, Inc. (N. Y.), was under section 203 (b) (4), supra, a nontaxable exchange and the basis for determining the disposition of the contract was under section 204 (a) (8), the same as it would be in the hand of the transferor, the petitioners argue that the basis should only be diminished by the amount of the deductions for exhaustion which were allowable after Artemas Ward, Inc. (N. Y.), acquired the contract. This argument is founded on section 202 (b) (2) of the Revenue Act of 1926, 26 USCA § 933 (b) (2), which says that in computing the amount of gain or loss from the disposition of property: "(2) The basis shall be diminished by the amount of the deductions for exhaustion, wear and tear, obsolescence, amortization, and depletion which have since the acquisition of the property been allowable in respect of such property under this Act [title] or prior income tax laws."

The petitioners contend that the word "acquisition" means acquisition to the taxpayer. But where there has been a nontaxable exchange we think the "acquisition" referred to is that of the transferor. It is impossible to see why different rules should be employed for determining profit or loss where items of exhaustion are or are not allowable and where property that has been the subject of a nontaxable exchange is sold or otherwise disposed of. The purpose of the statutory provisions we have quoted was to disregard the corporate intervention when computing gain or loss in such cases. Under section 204 (a) (8) the basis is "the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor." To allow deduc-

tions for exhaustion under a different principle or in a more limited way would contravene the entire theory applicable to nontaxable exchanges. Perthur Holding Corp. v. Commissioner, 61 F.(2d) 785 (C. C. A. 2); American Compress & Warehouse Co. v. Bender (C. C. A.) 70 F.(2d) 655. The Board of Tax Appeals properly took into account items allowed for exhaustion when the contract was in the hands of the transferor and rightly disallowed any loss through cancellation because the value had already been exhausted.

It is now necessary to deal with the second point raised by the taxpayer. That is whether the loss on the sale of the 4,964 shares of Artemas Ward, Inc. (N. Y.), which the United Brokerage Company and its affiliates were entitled to, was $2,167,-785.56 as claimed, or was only $495,696.76, the loss allowed by the Board. This depends on what portion of the amount paid for the stock by United Brokerage Company is allocable to the stock of Artemas Ward, Inc. (N. Y.), and what portion to the stock of Artemas Ward, Inc. (Del.). This in turn depends on whether Article 1599 (2) of Regulations 69 should be applied in its original form or as it stood after amendment in 1929.

Section 203 (c) of the Revenue Act of 1926, 26 USCA § 934 (c), provides that, if there is distributed, to a shareholder in a corporation, a party to a reorganization, stock in such corporation or in another corporation, a party to the reorganization, without the surrender by the shareholder of the stock originally held, no gain to the stockholder shall be recognized. Section 204 (a) (9) of the act, 26 USCA § 935 (a) (9), provided that where (as here) such distribution was made after December 31, 1923, "the basis in the case of the stock in respect of which the distribution was made shall be apportioned, under rules and regulations prescribed by the Commissioner with the approval of the Secretary, between such stock and the stock or securities distributed."

The question is whether Article 1599 (2), supra, applies in its earlier form or as later amended on November 13, 1929. Before the amendment, Article 1599 (2) read thus: "Where the stock distributed in reorganization is in whole or in part of a character or preference materially different from the stock in respect of which the distribution is made, the cost or other basis of the old shares of stock shall be divided

896

between such old stock and the new stock in proportion, as nearly as may be, to the respective values of each class of stock, old and new, at the time the new shares of stock are distributed, and the basis of each share of stock will be the quotient of the cost or other basis of the class with which such share belongs, divided by the number of shares in the class. The portion of the cost or other basis of the old shares of stock to be attributed to the shares of new stock shall in no case exceed the fair market value of such shares as of the time of their distribution."

█ Where the new stock is stock of a corporation different from the old, it has been treated as stock of "a character or preference materially different" within the meaning of the foregoing regulation. Accordingly, if Article 1599 (2) as it read at the time of the sale of the 4,964 shares of Artemas Ward, Inc. (N. Y.), be applied, the last sentence of (2) would entitle the United Brokerage Company to a loss of $2,-167,785.56. This is because the portion of the cost of the old stock to be attributed to the new stock could not exceed the fair market value of the 100 shares of stock of Artemas Ward, Inc. (Del.), at the time of the distribution of the latter. As we have shown in the statement of facts, the value of the latter stock at that time was $961,-952.86. If $961,952.86 be deducted from $3,414,345.63 (the cost of the shares of Artemas Ward, Inc. [N. Y.], to United Brokerage Company), there would remain $2,452,392.77 as the base or proportion of the cost of the old stock applicable thereto after the reorganization. If from $2,452,-392.77 be deducted $234,967.21 of accounts receivable distributed by Artemas Ward, Inc. (N. Y.), to United Brokerage Company, and $49,640 realized by the United Brokerage Company from the sale of the 4,964 shares of stock of Artemas Ward, Inc. (N. Y.), we have a balance amounting to $2,167,785.56—the loss claimed by the taxpayer.

Limitation by the last sentence of subdivision (2), supra, to the fair value of stock of Artemas Ward, Inc. (Del.), at the time of distribution would make the proportion of cost to United Brokerage Company represented by that stock only about 28 per cent., though the Delaware Company had received 77.15 per cent. of the assets of the old company. Doubtless, because such a limitation was thought to attribute in situations like the present too small a proportion of the basic cost to the stock of the new corporation distributed to stockholders through a reorganization, the Commissioner amended Article 1599 (2) on November 13, 1929, by omitting the last sentence of subdivision (2). Applying the regulation as amended, he computed the loss on the sale of the stock of Artemas Ward, Inc. (N. Y.), at $495,696.76. The Board by employing that loss in determining the income of the affiliated corporations arrived at the income tax deficiencies under review. We cannot see that the method of apportionment required by the amendment was unreasonable, and if the Commissioner had the right to apply the Regulation, as amended in 1929, to prior transactions under which the taxpayers would be entitled to deduct a larger loss, the decisions of the Board were right.

█ The taxpayers argue that the Commissioner had no right to apply the Regulations, as amended, to prior transactions, and cite Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348, in support of their contention. But Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254, indicates that the former decision does not govern the present situation. The latter decision shows that if under power to adopt Regulations delegated by Congress to the Commissioner authority is given to change the Regulations, the Regulations are to the extent of that power tentative as to any matters affected, and that the changed Regulations, if reasonable, may be applied retroactively. In Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254, this principle was applied in the case of freight rates which had been charged under a power to fix and to change the same delegated by the state of Montana to its Board of Railroad Commissioners. The rates were afterwards lowered by the State Board and the shipper was allowed to recover the excess from the carrier. In Titsworth v. Commissioner, 73 F.(2d) 385 (C. C. A. 3), the very argument presented here of the inability of the Commissioner to apply amended Article 1599 (2) retroactively was made without avail. Cf. Burnet v. S. & L. Bldg. Corp., 288 U. S. 406, 53 S. Ct. 428, 77 L. Ed. 861.

There can be no doubt that Congress has power to make income tax laws retroactive. Brushaber v. Union Pac. R. Co., 240 U. S. 1, 11, 36 S. Ct. 236, 60 L. Ed. 493. This is especially true where they only af-

fect deductions that may be taken from income, which are always matters of legislative favor. Under the Revenue Acts of 1924 and 1926 the Commissioner was given discretion to apply his regulations without retroactive effect if the reversal of a former ruling was not immediately occasioned by a decision of a court of competent jurisdiction. Revenue Act 1924, § 1008 (a), and Revenue Act 1926, § 1108 (a), 26 USCA § 1251 note. Under the Revenue Act of 1928, § 605 (26 USCA § 1251 (a), the Commissioner was given the same discretion without the limitation as to how the change in his former ruling was occasioned. Under the Revenue Act of 1934, § 506 (26 USCA § 1251 (a), the 1928 provision was practically reiterated. Each of these enactments shows that the Regulations of the Commissioner are to be regarded as tentative for the reason that amendments are retroactive unless stated to be otherwise. Accordingly the Regulations in question are to be treated as retroactive to the date of the law to which they are applicable.

Orders affirmed.

MANTON, Circuit Judge, dissenting in a separate opinion.

MANTON, Circuit Judge (dissenting).

This appeal involves income taxes for 1925 and 1926, of both petitioners. The questions presented are: (1) Where a corporation which acquired a contract in a nontaxable exchange for stock pursuant to a transaction described in section 203 (b) (4) of the Revenue Act of 1926, 26 USCA § 934 (b) (4), and hence under section 204 (a) (8) of the act, 26 USCA § 935 (a) (8), is required to use the basis of the transferor in measuring the loss from the cancellation of that contract, should that basis be reduced by the amount of deductions for exhaustion allowable to the corporation taxpayer only or by the total exhaustion allowable to both the taxpayer and the transferor; and (2) whether the loss sustained in 1926 on the sale of stock, received in a nontaxable distribution in pursuance of a plan of reorganization, should be determined upon the basis of regulations in effect in 1926 (article 1599, Regulations 69), or upon the basis of an amended regulation promulgated in 1929 (article 1599, Regulations 69).

Artemus Ward, prior to March 1, 1913, had a contract for advertising, vending, and news selling privileges on the cars and stations of the subways and elevated railways of the Interborough Rapid Transit Company. The fair value of this contract was appraised by the Commissioner, as of March 1, 1913, at $3,028,096.42. March 13, 1922, Artemus Ward transferred this contract to a New York corporation, Artemus Ward, Inc., in exchange for the stock of the corporation. The United Brokerage Company which filed a consolidated return with the petitioners, purchased the entire issued and outstanding capital stock of Artemus Ward, Inc., consisting of 4,964 shares of no par value, on June 30, 1925, for $3,414,-345.63. This contract was canceled November 1, 1925. In the consolidated return filed by the United Brokerage Company for 1925, the income and deductions of Artemus Ward, Inc., were included for the period of July 1 to December 31, 1925. One deduction claimed by Artemus Ward, Inc., was a loss resulting from the cancellation of the contract, and it was disallowed by the respondent. In the petition filed with the Board, petitioner claimed a deduction for the loss sustained, in the sum of $605,-619.30. This was computed by reducing the March 1, 1913, valuation of $3,028,096.42 by annual deductions for the exhaustion of the life of the contract on the basis of a remaining life on March 1, 1913, of 15⅚ years. The exhaustion so computed amounted to $2,422,477.12, leaving an unexhausted March 1, 1913, value of $605,619.30. The respondent computed the amount of exhaustion allowable both to the transferor Artemus Ward, the individual, and to the transferee, Artemus Ward, Inc., in terms of March 1, 1913, value, at the rate of $191,-248.20 per year, except in 1922 and 1923, when an allowance was permitted for exhaustion of the contract in the amount of $766,642.59 for each of the two years. The deductions allowable for exhaustion of the contract during the period it was owned by Artemus Ward, Inc., were $613,314.07 for 1922, and $766,642.59 for 1923, based upon the value at the date of the acquisition of the contract by Artemus Ward, Inc., on March 13, 1922.

The plan of reorganization referred to in the prevailing opinion became effective during 1925, and in 1926, the United Brokerage Company sold the shares of Artemus Ward, Inc. (N. Y.), for $49,640.

In its return for 1926, the United Brokerage Company claimed a deduction of $3,062,314.54 as a loss resulting from the sale of the stock of Artemus Ward, Inc.

(N. Y.). This loss was computed in accordance with the provisions of subdivision (1) of Article 1599, Regulations 69, then in effect for sales made in 1926. But the respondent applied the provisions of Article 1599 (2) of Regulations 69, as amended November 13, 1929, and determined the loss sustained to be $495,696.76. The distribution to the United Brokerage Company on December 31, 1925, of the stock of Artemus Ward, Inc. (Del.), worth $961,952.86, and accounts receivable worth $234,967.21 was followed, in December 1926, by the sale of the stock of Artemus Ward, Inc. (N. Y.), for $49,640, and this made it possible to ascertain the amount of the loss which had been sustained by the parent company. It paid $3,414,345.63 for the stock of the New York corporation, and it received assets worth only $1,246,560.07 and therefore suffered a loss of $2,167,785.56 on the transaction.

Pursuant to section 204 (a) (8), the basis for determining the gain or loss from the sale of the contract in the hands of Artemus Ward, Inc., was the same as it would be in the hands of Artemus Ward, the transferor, $3,028,086.42. The reason the loss sustained by cancellation of the contract was disallowed was that the aggregate amount of the deductions allowed or allowable for the exhaustion of the contract to Artemus Ward, the transferor, from March 1, 1913, to March 13, 1922, and to Artemus Ward, Inc., subsequent to the time said contract was acquired by it on March 13, 1933, and prior to November 1, 1925, was in excess of the basis of $3,028,096.42. Under the provisions of section 202 (b) (2) of the Revenue Act of 1926, 26 USCA § 933 (b) (2), the basis to Artemus Ward, Inc., of $3,028,096.42 is reduced only by the aggregate of deductions allowable to it for exhaustion of such contract during the period the contract was owned by it. The aggregate amount of the deductions allowable to it for the exhaustion was $1,730,-578.36; thus Artemus Ward, Inc., suffered a loss of $1,297,518.06. The value of this contract to the transferee, Artemus Ward, Inc., must be computed undiminished by any exhaustion allowed or allowable to the transferor, Artemus Ward. It should not include any deductions · for exhaustion which may have been allowed or allowable to the transferor, Artemus Ward, prior to March 13, 1922.

Section 203 (c) of the Revenue Act of 1926, 26 USCA § 934 (c), provides that if there was distributed to a shareholder in a corporation a party to a reorganization, stock in such corporation or in another corporation a party to the reorganization, without the surrender of the stock originally held, no gain to the shareholder should be recognized. Section 204 (a) (9) of the act, 26 USCA § 935 (a) (9), provides that in such cases the basis of the old stock should be apportioned between the old and new stock under rules and regulations prescribed by the Commissioner. Regulations 69, Art. 1599, promulgated August 28, 1926, provided that where the new stock was of substantially the same character or preference as the old stock, the basis of each share should be determined by dividing the cost of the old stock by the total number of old and new shares. Paragraph 2 provided that where the new stock was of a character or preference materially different from the old stock, the cost of the latter should be divided between the old and the new stock in proportion to the respective values of each class of stock at the time of distribution, but with the proviso that the basis of the old shares of stock to be attributed to the new stock shall in no case exceed the fair market value of such shares as of the time of their distribution. Thus, if the allocation is to be made under paragraph 2 of Article 1599, the cost of the old stock should be divided between the old and the new in proportion to the respective values of each class; the amount to be attributed to the new stock not to exceed the value of such stock under the limitation contained in the article as then promulgated. The value of the new stock was $961,952.86; the remainder of the cost of $3,414,345.63, that is, $2,-452,392.77, should be allocated to the old stock, and after deducting the accounts receivable and the sum received when the old stock was sold, there was a loss of $2,167,-785.56. This is the actual loss sustained by the United Brokerage Company as shown in the statement of facts.

The prevailing opinion holds that the original article is inapplicable by reason of the promulgation, on November 13, 1929, of an amendment to Article 1599 of Regulations 69, providing explicitly that where the stock distributed was stock in a corporation other than the distributing corporation, the basis of the old stock should be apportioned under paragraph 2 of the article, omitting the last sentence of the original article. The prevailing opinion thus applies the amended article to the distribution made by Artemus Ward, Inc., on December 31, 1925, retroactively. Great Northern R. Co. v.

Sunburst Oil & Refining Co., 287 U. S. 358, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254, is relied upon.

In Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348, the holding of the court was that when the Interstate Commerce Commission declares a certain rate to be a reasonable rate, it speaks as the Legislature and its pronouncement has the force of a statute, the Interstate Commerce Commission, in naming the rate, speaking in a quasi legislative capacity. This being so, the court held that the Interstate Commerce Commission cannot, by a later provision, declare its own finding of reasonableness to be erroneous and subject a carrier, which conformed thereto, to a reparation measured by what the Interstate Commerce Commission later holds it should previously have decided. The Great Northern Ry. Case, supra, in no way changed this holding. In that case, the court held that where it is clear to all concerned that a rate as fixed is but tentative and provisional, the rate may be changed retroactively. The court found that notice had been given to all that the rate was subject to retroactive change. The court said that the Arizona Case, supra, was not in conflict with such view, because Congress had not there intended that the Interstate Commerce Commission have power to change rates retroactively. The Great Northern Case in no way implied, as might be concluded from the prevailing opinion, that the mere power to change regulations makes such regulations only tentative, and therefore capable of being applied retroactively when changed. The very "meat" of the Great Northern Case was that all concerned knew and understood that the rates, as fixed, were originally tentative, not that they were simply subject to change. Where regulations are only subject to change, but are not understood to be tentative, the Arizona Case, supra, applies, and they cannot be applied retroactively.

Prior to the enactment of the 1926 Act, the authority of the Commissioner arbitrarily to decide whether or not later regulations were to be applied retroactively was seriously questioned. As a result, the Revenue Act of 1926, § 1108 (a), 26 USCA § 1251 note, gave the Commissioner a wide discretion. The discretion was not to apply it with retroactive effect, but without retroactive effect. The 1928 Act is in the same terms. Section 605, Revenue Act of 1928, 26 USCA § 1251 (a). "The purpose of the above provision of law is to prevent the constant reopening of cases on account of changes in regulations or treasury decisions." Prentice-Hall Tax Service (1934) § 21,207. The 1934 Act, § 506, 26 USCA § 1251 (a), provides that the Secretary or Commissioner, with the former's approval, may prescribe the extent, if any, to which any regulation shall be applied "without retroactive effect." See Report Ways & Means Committee, 1934.*

The retroactivity of an amended regulation may depend upon whether the regulation under discussion declares the law or merely interprets it. If the latter, then the regulation, in reality, has no retroactive effect of itself. The regulation would be only interpretive of the statute which imposes the tax. If, on the other hand, it is declarative of the law, then the amended regulation might well be invalid if it adversely and unjustly affected the taxpayer. The Report of the Ways and Means Committee recognized the distinction and also that those regulations, which are of a nature other than merely interpretive, often work inequitable results when applied retroactively. This fact, which was considered a reason for giving the Commissioner discretion to apply regulations nonretroactively, is also a reason for refusing to give a retroactive effect to an amended regulation even though the Commissioner does not exercise his discretion.

Congress did not declare, in section 204 (a) (9), the method by which the basis

---

* "The amendment extends the right granted by existing law to the Treasury Department to give regulations and Treasury Decisions amending prior regulations or treasury decisions prospective effect only, by allowing the Secretary, or the Commissioner with the approval of the Secretary, to prescribe the exact extent to which any regulation or Treasury decision, whether or not it amends a prior regulation or treasury decision, will be applied without retroactive effect. * * * " "Regulations, * * * which are merely interpretive of the statute, will normally have a universal application, but in some cases the application of regulations, * * *, to past transactions which have been closed by taxpayers in reliance upon existing practice, will work such inequitable results that it is believed desirable to lodge in the Treasury Department the power to avoid these results by applying certain regulations, * * * with prospective effect only." Prentice-Hall Federal Tax Service (1933) § 21, 207.

900

should be apportioned. Rather, it delegated to the Commissioner the power to make rules and regulations for such apportionment with the approval of the Secretary. To say that the Commissioner is merely interpreting the law in such case is erroneous. Before the Commissioner promulgated Article 1599 of Regulation 69, there was no law in regard to the method to be used in apportioning the basis, and the Commissioner, when he promulgated the article, made the law. The regulation was not interpretive of the law, because before the regulation there was no law. The Commissioner acted in what the Supreme Court, in the Arizona Grocery Case, supra, called a quasi legislative manner. Regulations made by the Commissioner in pursuance of his delegated authority, with the Secretary's approval, have the force and effect of statutes. U. S. v. Eliason, 16 Pet. 291, 10 L. Ed. 968; In re Huttman (D. C.) 70 F. 699. And so, when the Commissioner, in accordance with his delegated power, acts in behalf of Congress in enacting such a regulation as is considered in the instant case, the regulation promulgated by him will be considered declarative of the law, and quasi legislative in nature. Consequently, the regulation should not be applied with retroactive effect. To do so would be unreasonable and capricious. Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., supra.

The deduction should be allowed, and the decision reversed.