Eugene J. Gibbons and Dorothy G. Gibbons v. Commissioner.
Gibbons v. Commissioner
Docket No. 2239-70.
United States Tax Court
T.C. Memo 1972-194; 1972 Tax Ct. Memo LEXIS 63; 31 T.C.M. (CCH) 949; T.C.M. (RIA) 72194; September 6, 1972
Eugene J. Gibbons, pro se, 8750 Georgiaave., Apt. 314B, Silver Spring, Md.James Q. Smith, for the respondent. 950 TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiences in petitioners' income tax of $1,514.10 for the taxable year ended December 31, 1966 and $1,690.36 for the taxable year ended December 31, 1967. The sole issue is the availability of the unused portion of net operating losses for the taxable years 1963 and 1964, which, in turn, depends upon the validity of certain claimed deductions for those years. All of the facts have been stipulated and are found accordingly. Petitioners are husband and wife and had their legal residence in Silver Spring, Maryland, at the time of the filing of the petition herein. They filed timely joint Federal income tax returns for 1966 and 1967 with the district director of internal revenue, Baltimore, Maryland. Dorothy *65 G. Gibbons is a party hereto solely by reason of having signed those returns. Any reference to Gibbons shall be deemed to refer to Eugene J. Gibbons. From 1960 through 1963, Gibbons operated a deep coal mine on property located in Hazleton, Pennsylvania. In 1963, a mine shaft caved in, trapping three men. Two were saved but one man was buried alive. In 1960, Gibbons had acquired the mining rights to the property, including the cavedin portion, for $1.00. On their amended 1963 income tax return, petitioners deducted a business loss of $40,500 with respect to the loss of the caved-in portion of the mine and mine shaft. In 1964, Gibbons was required, by order of a Pennsylvania court, to deed 300 feet by 500 feet of the mining rights below the surface of the caved-in portion to the widow of the entombed miner as a burial site for her husband. On their amended 1964 return, petitioners reported wages, salaries, etc., of $3,102.20 as their only income and claimed charitable contributions of $183.77. They also claimed a loss of business property in the amount of $69,066.60, representing the alleged value of the property deeded for the burial site. There are gaps in the stipulated *66 facts which, under other circumstances, might impair our ability to reach a decision herein. But we are satisfied that we can assume facts most favorable to petitioners [1] and still readily dispose of the matters at issue. As we understand petitioners' position as to the 1963 deduction, they claim that the amount thereof should be measured by the fair market value of the property involved and not the $1.00 basis of the property to Gibbons. Respondent does not dispute the proposition that Gibbons suffered a business loss from the cave-in. He simply contends that the loss is limited to the basis of the property. The operative provision is section 165, [2] and it is beyond question that any loss under that section may not exceed the basis of the property. Sections 165(b) and 1011; *67 Helvering v. Owens, 305 U.S. 468 (1939). Petitioners' argument that they should be entitled to the same basis as a donee of property misses the mark. Petitioners misconceive the measure of the basis of property acquired by gift. Section 1015 provides that, for the purposes of determining loss, the basis of property to a donee is the lesser of its cost to the donor or its fair market value at the date of gift, with an adjustment to reflect any gift tax which may have been paid. As far as the 1964 transfer is concerned, petitioners seem to argue that they should be considered as having made a gift to the State of Pennsylvania, thereby entitling them to a deduction for a charitable contribution under section 170. Petitioners' argument is without foundation for several reasons. First, section 170(c) requires that a charitable contribution be made "to or *68 for the use of" a State, etc. See Denver & Rio Grande Western Railroad Co., 38 T.C. 557, 583-584 (1962). Clearly, the transfer here was to the widow of the deceased miner for use as a burial site. The fact that the transfer may have been compelled by an arm of the State government does not satisfy the statutory requirement. Second, the contribution must be made "for exclusively public purposes," a condition which cannot possibly be considered as having been satisfied herein. Third, Gibbons made the transfer under the legal compulsion of a court order - an element which itself is sufficient to preclude a 951 finding of a charitable contribution. [3] Compare United States v. Transamerica Corporation, 392 F. 2d 522 (C.A. 9, 1968); Jordon Perlmutter, 45 T.C. 311 (1965). Even if we were to consider that the court order constituted a conversion of the property, petitioners' loss would still be limited to Gibbons' basis in the property under section 165(b). *69 Finally, we reject petitioners' contention that to deny them the deductions claimed herein, while allowing charitable deductions equal to the fair market value rather than the basis of the donated property, subjects them to unconstitutional discriminatory treatment. Whatever may be the boundary line between constitutional and unconstitutional provisions of tax statutes, we are completely satisfied that the applicable sections of the Internal Revenue Code, which require the denial of the claimed deductions herein, are well inside the permissible limits. Cf. Brushaber v. Union Pac. R.R., 240 U.S. 1, 24-25 (1916). Decision will be entered for the respondent. Footnotes
1. Petitioners claim that respondent never questioned the fair market values of the property which formed the basis of the claimed deductions and additionally that he conceded at a pretrial conference that those values were not in issue. We accept petitioners' claim solely for the purposes of our decision herein.↩
2. All references are to the Internal Revenue Code of 1954, as amended and as in effect during the taxable years involved herein.↩
3. We note that, in any event, petitioners' deduction for a charitable contribution would be severely limited by the percentages of adjusted gross income excludable under section 170. Additionally, we observe that, even if we could evolve some theory that the deed to the property discharged an obligation of Gibbons, the payment of which might properly be considered an ordinary and necessary business expense, e.g., compensation to the deceased miner, petitioner would not be benefitted thereby. The transaction would be considered an exchange of the property in return for the discharge of the obligation, thereby giving rise to taxable gain, the full amount of which would, for the purpose of the net operating loss deduction, be includable in income. See section 172(d)(2)(B); United States v. General Shoe Corporation, 282 F. 2d 9 (C.A. 6, 1960); Santa Anita Consolidated, Inc., 50 T.C. 536, 561-562↩ (1968). The combination of such includability with the deduction would simply produce a "wash" for the purposes of the instant case.