CHARLES H. STODDARD AND CLARA L. STODDARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
STODDARD v. COMMISSIONER
Docket No. 25278-92
United States Tax Court
T.C. Memo 1993-400; 1993 Tax Ct. Memo LEXIS 412; 66 T.C.M. (CCH) 585; August 31, 1993, Filed *412 Decision will be entered under Rule 155. Charles H. Stoddard and Clara L. Stoddard, pro sese. For respondent: Josh Ungerman. PATE
PATE
MEMORANDUM OPINION PATE, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioners' 1989 Federal income tax of $ 5,968 and an addition to tax pursuant to section 6662 of $ 1,194. After concessions by respondent (including the addition to tax pursuant to section 6662), the issues for out decision are: (1) Whether petitioner Charles H. Stoddard must include in gross income the value of common stock of his employer that was distributed to him from an employee stock ownership plan; (2) whether petitioners may exclude from income annuity payments that they elected to receive from a life insurance policy; *413 (3) whether petitioners are entitled to a foreign tax credit; and (4) whether the Internal Revenue Code is valid. Some of the facts have been stipulated and are so found. Petitioners are husband and wife and filed a joint income tax return for 1989. They resided in Mesquite, Texas, at the time they filed their petition in this case. Distribution from TRASOP
Charles H. Stoddard (hereinafter petitioner) was employed by Consolidated Edison Company of New York, Inc. (hereinafter Con Ed or the company). In connection with his employment, petitioner participated in Con Ed's Tax Reduction Act Stock Ownership Plan (hereinafter TRASOP or the plan), from 1975 through 1989. The plan was designed to provide its employees with an equity interest in the company that, after retirement, could be used to supplement their pension income. It was a qualified stock bonus plan so that Con Ed's contributions, dividends, and other income allocated to petitioner's plan account were not includable in petitioner's income in the year in which they were received by the trustee of the plan. Initially, Con Ed made all contributions to the plan; all contributions were made in cash. Beginning in *414 1977, however, employees were also permitted to make cash contributions and thereby receive a matching contribution from Con Ed. Petitioner made cash contributions under this option. The trustee, Banker's Trust Co., then invested the cash contributed in common stock of the company. The trustee also purchased additional shares with the dividends it received. Petitioner withdrew a portion of his plan account in 1986 and 1988. When he retired in 1989, the trustee distributed the balance of the assets allocated to his plan account to him in a lump sum. The following table shows the assets distributed to petitioner, the amount the trustee reported on the Form 1099R issued to petitioner, and the amount petitioner reported on his joint income tax return for 1989. Asset Amount
Amount on
Amount on
Distributed
Form 1099R
Tax Return
820 Shares Con Ed
stock at fair mkt. value
$ 20,398 $ 20,398 $ -0-
Less unrealized
appreciation
(8,990)
(8,990)
Net (cost of shares
to trustee)
11,408 11,408 -0-
Cash dividend
356 356 [1] 356
Cash in lieu of
fractional share
15 15 15
$ 11,779 $ 11,779 $ 371
*415 Petitioner contends that he need not include the value of the Con Ed stock distributed to him in his gross income until he sells the stock. He argues that the distribution was simply a name change from the trustee to petitioner because the stock had previously been allocated to his plan account. Respondent maintains that petitioner received a distribution from a qualified stock bonus plan and, therefore, must report the distribution as income. She further maintains that the amount that must be reported is equal to the fair market value of the Con Ed stock received less the net unrealized appreciation on that stock. We agree with respondent. Section 401(a) sets out the requirements a trust must meet to be part of a qualified stock bonus, pension, or profit sharing plan established by an employer for the exclusive benefit of its employees or their beneficiaries. In general, distributions to an employee or beneficiary from such a plan are taxable in the year distributed as provided by section 72. Sec. 402(a)(1). However, section 402(e) sets out separate rules for lump-sum distributions. A lump-sum distribution is a distribution within 1 taxable year of the balance to the credit *416 of an employee that becomes payable on account of the employee's separation from the service. Sec. 402(e)(4)(A); Samonds v. Commissioner, T.C. Memo. 1993-329. When a lump sum distribution includes securities of the employer, they are includable in the employee's gross income at their fair market value less the net unrealized appreciation in the employer securities. Sec. 402(e)(4)(J). A stock's net unrealized appreciation is the excess of the fair market value of the stock on the date it is distributed over the stock's cost or other basis to the plan's trustee. Sec. 1.402(a)-1(b)(2)(i), Income Tax Regs. Such appreciation in the value of the stock is not taxable until the employee disposes of the stock. The remainder of the fair market value of the securities distributed is included in the employee's gross income to the extent it exceeds his contributions. Sec. 72(e); sec 1.72-11(d), Income Tax Regs. These provisions are applicable to the instant case. First, we note that the parties do not dispute that Con Ed's TRASOP is a qualified stock bonus plan as defined in section 401(a). Moreover, because petitioner received the entire balance credited *417 to him under the plan in the year he retired, the distribution he received constitutes a lump-sum distribution. Therefore, the entire amount of such distribution is fully reportable upon receipt except for that portion of the lump-sum distribution that represents the net unrealized appreciation of the Con Ed securities. See Szilagyi v. Commissioner, T.C. Memo. 1982-656. Since it is also undisputed that the fair market value of the Con Ed stock petitioner received was $ 20,398, and that value reflected $ 8,990 of net unrealized appreciation, we hold that petitioner must include in gross income the difference of $ 11,408. Petitioner's contention that the stock distribution was simply a name change from the trustee to petitioner simply ignores the facts. The Con Ed stock received by petitioner was held in a trust that was qualified as an employee stock bonus plan. When the name was changed from the trustee's to petitioner's, it constituted a distribution from that qualified employee stock bonus plan. Such distributions are taxed under specific provisions of the Code, mainly sections 72 and 402, and we apply them accordingly. Further, petitioner *418 contends that he should be able to reduce the amount he must report by his after-tax contributions to the plan. Respondent maintains that petitioner recouped his basis when he made partial withdrawals from the plan in 1986 and 1988. The record simply does not contain enough information about petitioner's prior withdrawals from the plan (and the basis he applied against such withdrawals) for us to evaluate his contention. It is petitioner's burden to show that respondent's determination is wrong. Rule 142. Because he failed to do so, we hold that petitioner may not reduce the $ 11,408 of income by any of his contributions to the plan. Petitioner also contends that Con Ed's computation of net unrealized appreciation is incorrect because the trustee's cost of stock purchased with reinvested dividends is zero and that, therefore, only the cost of shares purchased with Con Ed's contributions should be included when computing net unrealized appreciation of the securities. However, petitioner did not submit sufficient evidence for us to determine how the net unrealized appreciation was calculated, nor did he direct our attention to any authority (nor can we find any) to support this *419 contention. In addition, petitioner argues that his plan distribution is excluded from income under a myriad of sections of the Internal Revenue Code. First, he argues that the stock distributed should be excluded from his gross income because it qualifies as a fringe benefit. Specifically, he contends that it qualifies as a qualified employee discount (as defined in section 132(c)) and therefore is excludable under section 132(a)(2). However, a "qualified employee discount" means any employee discount with respect to "qualified property or services". Sec. 132(c)(1). The term "qualified property or services" is defined as "any property * * * or services which are offered for sale to customers in the ordinary course of the line of business of the employer in which the employee is performing services." Sec. 132(c)(4). Since the stock distributed to petitioner is not property offered for sale to customers in the ordinary course of Con Ed's business and, therefore, does not constitute "qualified property or services", petitioner may not exclude the Con Ed stock he received as a qualified employee discount. Second, petitioner argues that the plan distribution constitutes an employee *420 achievement award that is excludable from his gross income under section 74(c)(1). The term "employee achievement award" is defined in section 274(j). That section limits the award to "an item of tangible personal property". The Con Ed stock distributed to petitioner simply is not tangible personal property. Therefore, the plan distribution does not constitute an employee achievement award as defined in section 274(j). Third, petitioner argues that stock distributed to him constitutes a nontaxable gift specifically excluded from his gross income by section 102(a). However, section 102(c) specifically eliminates (from the exclusion provided for gifts in section 102(a)) amounts transferred by or for an employer to an employee. Accordingly, his plan distribution is not a gift. Fourth, petitioner argues that the stock distributed to him is excludable from his gross income by virtue of section 305(e). Section 305(a) excludes from gross income "the amount of any distribution of the stock of a corporation made by such corporation to its shareholders with respect to its stock" (emphasis added), and section 305(e) applies the exclusion to qualified reinvestment of dividends in *421 stock of public utilities. However, petitioner did not receive his Con Ed stock from the company, nor was such distribution with respect to stock he held in the company. Rather, he received the stock from the trustee of Con Ed's TRASOP by virtue of his participation, as an employee, in a qualified stock bonus plan that had been established by Con Ed for the benefit of its employees. Therefore, section 305 is not applicable to petitioner's situation. Fifth, petitioner argues that he is entitled to deduct the total taxable amount of the plan distribution from his gross income pursuant to section 402(e)(3). However, that section allows a deduction when the taxpayer has elected to be taxed based on the 5-year averaging accorded lump-sum distributions. When 5-year averaging is elected, section 402(e) prevents the taxpayer from having to include the distribution in income twice. Since the deduction is not available to a taxpayer who has not elected to be taxed under section 402(e), and petitioner has not elected to be so taxed, section 402(e) is not applicable in his case. See sec. 1.402(e)(4)(B)-1, Income Tax Regs.
Annuity Payments
In 1959, petitioner purchased a $ 50,000 *422 life insurance policy from the Prudential Insurance Co. of America (hereinafter Prudential). Over the years, petitioner paid a total of $ 39,126 in premiums and received dividends of $ 20,610. In 1989, petitioner elected, as provided in the policy, to receive an annuity over a 9-year period. The parties have stipulated that the expected return on the contract is $ 27,661. Pursuant to his election, petitioner received payments of $ 1,696 and $ 1,020 during 1989. He did not report any portion of these payments as gross income on his 1989 joint income tax return. Petitioner contends that he is not required to include any of the payments he received in gross income until he has fully recovered his basis in the life insurance policy. Respondent maintains that petitioner may only exclude a portion of each payment as provided by section 72(b). We agree with respondent. Section 72(a) includes in gross income amounts received as an annuity. However, section 72(b) excludes that portion of each payment that bears the same ratio as the investment in the contract bears to the expected return under the contract. This ratio results in the exclusion of the taxpayer's investment in the *423 contract, pro rata, over the entire proceeds of the annuity. Under section 72(b), petitioner may exclude a portion of each payment he receives. Since petitioner's basis in the contract was $ 18,516 ($ 39,126 less $ 20,610) and the expected return is $ 27,661, we hold that petitioner may exclude 66.94% of the amounts he received from Prudential under this contract. [2]
Petitioner's argument that he may exclude all of his payments until such time as he has recovered his investment is not well taken. When the questioned payments are received after the annuity starting date, this method is applicable only when an annuity contract *424 is completely redeemed in 1 taxable year. See sec. 72(e); sec 1.72-11(d), Income Tax Regs. Finally, petitioner contends that, to compute the exclusion ratio under section 72(b), we must include the cash surrender value of the life insurance contract in determining his "investment in the contract". As stated previously, the "investment in the contract" is the aggregate amount of premiums or other consideration paid for the contract, less the aggregate amount received under the contract, to the extent such amount was excluded from gross income. Sec. 72(c)(1). We find nothing in the Code that would allow petitioner to include or substitute "cash surrender value" for his "investment in the contract". Sec. 72(b). Foreign Tax Credit
Petitioner contends that he is entitled to a foreign tax credit for alleged "federal" taxes withheld by New York State. Section 901 allows a credit for certain taxes paid to foreign countries or possessions of the United States. Petitioner has not presented any evidence that he actually paid taxes to any foreign country or possession. Accordingly, petitioner is not entitled to a foreign tax credit. Validity of the Internal Revenue Code
*425 Finally, petitioner challenges the validity of the Internal Revenue Code. However, the constitutionality of the income tax laws under the 16th Amendment was sustained in Brushaber v. Union Pac. R.R. Co., 240 U.S. 1 (1916); see McCoy v. Commissioner, 76 T.C. 1027, 1029-1030 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Petitioner reported this amount as $ 353 of dividends and $ 3 of interest.↩
2. Prudential issued a Form W-2P showing that the taxable portion of each payment was $ 899 and $ 541, respectively. The record does not contain an explanation of how these amounts were computed. In any event, our holding is based upon the amounts stipulated by the parties. The taxable amount computed from the use of this ratio is less than the amount reported to respondent by Prudential.↩