NEWMAN, Circuit Judge,
dissenting.
In the course of fulfilling the judicial obligation, there are occasions where a court can casually reach the unjust result, or can with a bit of thought reach the just result. “Literal interpretation of statutes at the expense of the reason of the law and producing absurd consequences or flagrant injustice has frequently been condemned.” Sorrells v. United States, 287 U.S. 435, 446, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Here, the court strains to reach the unjust result, through casual statutory interpretation that mocks the reason of the law. I respectfully dissent.
As certified by Verizon, Mario Boeri, a citizen of Italy, “never worked in the United States of America during any of his 36 years of service.” He was employed by Verizon or its predecessor GTE in Italy, Brazil, Argentina, and the Dominican Republic. Mr. Boeri had no income or Medicare or Social Security tax obligation to the United States. Yet Verizon withheld $70,559 of Mr. Boeri’s separation payment on his retirement from employment in the Dominican Republic. The withholding included United States income tax, Social Security tax, and Medicare tax; it is undisputed that Mr. Boeri was not liable for these taxes. Verizon sent the total with *1372 held amount to the IRS, identified as paid on behalf of Mr. Boeri. Mr. Boeri had no Social Security number or other tax identification number.
On March 10, 2009 Mr. Boeri requested from the IRS a refund of this erroneous payment. The request was made on IRS Form 1040NR, and was accompanied by IRS Form 4852 entitled “Substitute for Form W-2 ... or Form 1099-R.” Mr. Boeri states that this form was used because he “was never issued a Year-End Statement with which to file a U.S. income tax return.”
The record contains an official IRS transcript that shows a “refundable credit” to Mr. Boeri in the amotrnt of $70,559, dated 04-15-2005. No refund was made of this credit, and no notice was sent to Mr. Boeri of this credit. On Mr. Boeri’s refund request, the IRS refused to refund this “refundable credit” on the ground that it should have been requested within three years of April 15, 2005. In denying Mr. Boeri’s administrative appeal, the IRS Appeals Office stated, without further explanation, that “[biased on the information submitted, there is no basis to allow any part of your claim.” Letter from IRS Appeals Office to Mario Boeri (July 20, 2011).
Verizon wrongfully dispensed Mr. Boeri’s money to the IRS. The IRS wrongfully retained that money, without providing notification of the error as set forth in the agency’s own regulations. See IRS Pub. No. 1281, Backup Withholding for Missing and Incorrect Name/TIN(s) (2011):
Q. How do I know if a TIN [taxpayer identification number] on my account is incorrect?
A. After the submission of Form 1099 information returns, the IRS will send you a CP2100 or a CP2100A Notice and a listing of incorrect Name/TIN(s) reported on those forms.
Frequently Asked Questions, at 5. The law readily accommodates Mr. Boeri’s request for return of the funds that the Internal Revenue Service had recorded as his money, although the IRS was remiss in failing to notify him of any error as explained in the above Frequently Asked Question.
As recognized by my colleagues, the three-year look-back provision is neither a “statutory time limitation,” United States v. Brockamp, 519 U.S. 347, 348, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), nor a jurisdictional bar to recovery, Murdock v. United States, 103 Fed.Cl. 389, 392-94 (Fed.Cl.2012). Mr. Boeri’s money was sent to the IRS in error; notification should have been made and the funds returned, or at least some verification should have been sought. Instead, my colleagues hold that the IRS need not return Mr. Boeri’s money, although all agree — including the IRS — that the IRS has no right to it.[1]
In such circumstances, application of the look-back is not “the exertion of taxation, but a confiscation of property.” Brushaber v. Union Pac. R.R. Co., 240 U.S. 1, 24-25, 36 S.Ct. 236, 60 L.Ed. 493 (1916) (the *1373 “seeming exercise of the taxing power” may be a “taking ... in violation of the 5th Amendment” if sufficiently “arbitrary” or “so wanting in basis ... as to produce such a gross and patent inequality”); see Charles C. Steward Mach. Co. v. Davis, 801 U.S. 548, 584-85, 57 S.Ct. 883, 81 L.Ed. 1279 (1987) (arbitrary application of the tax statute, “if gross enough, is equivalent to confiscation and subject under the Fifth Amendment to challenge and annulment”). The Tucker Act’s six-year limitations period, not the three-year lookback, is controlling.
Neither the government, nor the Court of Federal Claims, nor my colleagues, can provide legal authority for retention of the erroneous payment. Maj. .op. 1369-70 (perhaps withholding was under chapter 24, or perhaps under chapter 3). My colleagues cannot even determine when Mr. Boeri’s taxes — which he did not owe— were supposedly “deemed paid.” Id. (perhaps April 15, perhaps June 15). Mr. Boeri states that the entirety of the withholding was a mistake, not a “tax overpayment.” The government does not argue otherwise. No matter; according to the panel majority, Mr. Boeri loses.
To justify this unjust result, the panel majority states that “Mr. Boeri was ... required to file a 2004 tax return in order to claim a refund,” citing 26 C.F.R. § 1.6012 — l(b)(2)(i). Maj. op. 6. This must be news to Mr. Boeri, since he had no U.S. tax liability, no tax identification number, no dealings with the IRS. In all events, the provision cited by my colleagues applies to a “nonresident alien individual ... who has income which is subject to taxation under subtitle A of the Code.” § 1.6012-l(b)(l)(i). Mr. Boeri had no income “subject to taxation” under any provision of the Code, and this assertion — which the government does not dispute — must be taken as true on a motion to dismiss. Subsection (b)(2)(i)’s exception-to-the-exception is irrelevant, and dismissal on the pleadings was incorrect.
“[Wjhere a particular construction of a statute will occasion great inconvenience or produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute.” Knowlton v. Moore, 178 U.S. 41, 77, 20 S.Ct. 747, 44 L.Ed. 969 (1900). A reasonable interpretation is that the look-back provision does not apply on these facts. The just action is to return the money that was mistakenly sent to the IRS in the name of a person with neither citizenship nor residency nor employment in the United States. The unreasonable and unjust action is to ratify the IRS’s appropriation of the money that the IRS agrees was incorrectly sent to it.
My colleagues provide a footnote referring to Mr. Boeri’s “unfortunate” circumstances, but argue that “the IRS cannot be faulted for applying the look-back law correctly,” maj. op. 7, ignoring that the IRS did not apply the correct law. If the IRS had applied the law correctly, a notification of the erroneous payment would have been issued and the payment returned, and on this appeal the government would know which Code provision supposedly governed the erroneous payment, instead of leaving this court to guess, see maj. op. 4-6 (guessing). The panel majority’s position that the IRS’s confiscation of Mr. Boeri’s money constitutes applying the law correctly is as insupportable as it is unconscionable.
From my colleagues’ choice of the unreasonable and unjust result, I respectfully dissent.

. The panel majority states at footnote 1 that in order to obtain a refund Mr. Boeri was required to file a return showing the tax overpayment. However, Mr. Boeri could not file a United States tax return for he was not subject to United States tax. He had no U.S. tax account, no tax identification number, no Social Security number or Medicare account. Instead of notifying Verizon or Mr. Boeri of the questions raised by this payment, the IRS remained silent and kept the money — which the IRS now refuses to return, although the government agrees that the IRS has no right to it.